UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTINA ANDREOLI, MAGDA APODACA, SANAZ ASHRAFIAN, CHAD AYERS, ALEXANDER PANYAVONG BACCAM, MONIKA BAEZ, DARIUS BAILEY, ALIVIA BAUMAN, MCKENZIE HOPE BAZEN, SOHA MOHAMAD EID BIZRI, ABEL BONILLA, JOHN BUSH, TERRY CAHALANE, RICHARD CAMPOS, AIMEE CHRISTINE CANCINO, JAMIE CAPONIGRO, KRISTIN CARBONE, CRYSTAL CARLINO, ARNOLD CARLSTROM, MARIA CASTRO, MENGMENG CHAO, ANA CHRISTIAN, AYMEN CHTOUROU, LORIN CIMATO, CHERYL C. CLAPPROOD, RONALDO A. COBRADO, BRIAN J. CZAPLA, MALINDA DENISE DAKE, TRENT DAVIS, ANTHONY DEMEO, ANDY DEREN, MICHAEL J. DESANTIS, SCOTT DEWATERS, JOHN S. DIXON, GEORGE EDWARD DIXON III, HEIDI IRENE DRAKE, ROBERT ANDREW DURANT, ANDREW T. EFFROSS, KHALIL K. ELDAHER, JULI FAHRNER, JOSEPH FISCHER, JAMES RICHARD FLETCHER, AMBER DAWN FOLKERT, JAMES FORNEY, WILLIAM FOSTER, JAN ANDREW FREYMAN, JORDAN ELIZABETH DAWN FRYE, JOSEPH WAYNE FRYE, BRANDY GADDIS, MIRANDA PATRICK GADDIS, HENRY GARCIA, KATHLEEN GARCIA, FREDERIC M. GARDNER, JERRY MILTON GEORGE, JUSTIN GORDNICK, DAVID M. GORWITZ, JOSH GRAHAM, JUNG GREER, ALEX GREGOR, ROBERT E. GRIGSBY, CYNTHIA GUNERA, MARTHA W. HAHN-FOURNIER, CHRISTOPHER HAIR, MATTHEW HAJEK, CHASE HALE, DOREEN HARDER, ALEXIS K. HARPER, LOGAN BAKER HARRINGTON, JESSICA M. HART, ROBERT TRAVIS HATT, HEATHER HAY, JARED HENDERSON, MAURICIO | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CASE NO.<br><br>**<u>JURY TRIAL DEMANDED</u>** |

HERNANDEZ, MICHAEL HERTWECK, §
ROBERT KENNETH HINTZ, HOLLIE §
HUBBARD-MARTINEZ, CASSANDRA §
IACONO, MARINA ILIZAROVA, CHRIS §
INSCO, NATHAN JOBE, RACHAEL JONES, §
SARA JONES, RONALD LANCE JUSTIN, §
JOELLE WANETTE KEE, BONNY LUCILLE §
KEMPER, IAN KING, TOM KINNAMAN, §
CATHY KRAEER, JARED KRAMER, TODD §
KRUTCHEN, NICHOLAS K LANGENSTEIN §
SR, HENRY LAPERLE, LINDSEY LAVELY, §
JANIKA LEWIS, LAWRENCE LEWIS, §
RICARDO LOPEZ, JOHN LOPEZ JR, §
SAMUEL PAUL LOSEE, DENNIS §
MAHONEY, MARK IRA MANBECK, §
LOGAN JOSHA MARTIN, JOEL BRILL §
MAXWELL, WILLIAM MCDAVID, KYLE §
LUIS MENDES, ROSE MERHEB, JAY §
MEYERS, JUSTIN MIEDEMA, SHAWN §
MILLENDER, JAMES A. MILLER, SONYA §
RENEE MILLER-HOLMES, RODNEY M. §
MILTON JR, ASHLEY T. MINER, DONNA §
MIRAGLIA, MARA MONTENEGRO, §
GERALD MORIN, DEVIN MOSLEY, §
KATHRYN MOULTON, JAMES B. §
MULLIN, DANIEL PRESCOTT MURRAY, §
RIZWAN ROSHANALI NAZARALI, §
ABDIEL NEGRON, STEVE F. OPPERMAN, §
VICTORIA LEIGH OWENS, MAXIM §
PANASENKO, DRAKE CALEY PATTEE, §
PAUL FRANCIS PEDRON, LAURA L. §
PETERSE, LAYTON EDWARD PETERSON, §
DANIEL E. PINGREE, RICARDO §
POLANCO, GARY J. POLLICK, MARK S. §
RECENE, JARED RENFROE, NEIL §
RICHARDSON, CYNTHIA RIZZITELLO, §
CHARLES JOSEPH ROBINSON, GREGORY §
JOSEPH ROCCO, GARY MICHAEL ROSE, §
PRASHANNA SANGROULA, SRINIVAS §
RAO SANKARANENI, IRENE NEDIME §
SEFERIAN, RICHARD FRANCIS SELSOR, §
JAMES RAY SHOULDERS, ANGELA §
MOODY SHRYOCK, TANNER K. SKALLA, §
MATTHEW SOLLARS, SAMAR SOOD, §
GEORGE JR SOSA, JASON SPERBER, §
HARRY A. SPORIDIS, REBECCA NAN §

SQUYRES, SCOTT D. STEEVES, RICHARD REAGAN STEWART, JACKIE DAVID STRANGE, ZACHARY J. TAKERIAN, SHAWN MICHAEL THOMPSON, JAMES CANTRELL TIMBS, CHRIS TOMPKINSON, WES GARET VAN DER VOOT, JOSHUA DANIEL WAUGH, JONATHAN R WEISS, HEATHER MARIA WHIPPLE, ROBYN WIEDMAN, EMILY WILD, MICHAEL J. WOLFE, LAUREN MARIE YOUNG, JON DAVID ZEMP, ERIC CRAWFORD, VANESSA LYNN PERRY, AND SAHNI'S ENTERPRISES, INC.,

Plaintiffs,

v.

FCA US, LLC,

Defendant

§ § § § § § § § § § § § § § § § § § § § §

**PLAINTIFFS' COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Christina Andreoli, Magda Apodaca, Sanaz Ashrafian, Chad Ayers, Alexander Panyavong Baccam, Monika Baez, Darius Bailey, Alivia Bauman, Mckenzie Hope Bazen, Soha Mohamad Eid Bizri, Abel Bonilla, John Bush, Terry Cahalane, Richard Campos, Aimee Christine Cancino, Jamie Caponigro, Kristin Carbone, Crystal Carlino, Arnold Carlstrom, Maria Castro, Mengmeng Chao, Ana Christian, Aymen Chtourou, Lorin Cimato, Cheryl C. Clapprood, Ronaldo A. Cobrado, Brian J. Czapla, Malinda Denise Dake, Trent Davis, Anthony Demeo, Andy Deren, Michael J. Desantis, Scott Dewaters, John S. Dixon, George Edward Dixon Iii, Heidi Irene Drake, Robert Andrew Durant, Andrew T. Effross, Khalil K. Eldaher, Juli Fahrner, Joseph Fischer, James Richard Fletcher, Amber Dawn Folkert, James Forney, William Foster, Jan Andrew Freyman, Jordan Elizabeth Dawn Frye, Joseph Wayne Frye, Brandy Gaddis, Miranda Patrick Gaddis, Henry

Garcia, Kathleen Garcia, Frederic M. Gardner, Jerry Milton George, Justin Gordnick, David M. Gorwitz, Josh Graham, Jung Greer, Alex Gregor, Robert E. Grigsby, Cynthia Gunera, Martha W. Hahn-Fournier, Christopher Hair, Matthew Hajek, Chase Hale, Doreen Harder, Alexis K. Harper, Logan Baker Harrington, Jessica M. Hart, Robert Travis Hatt, Heather Hay, Jared Henderson, Mauricio Hernandez, Michael Hertweck, Robert Kenneth Hintz, Hollie Hubbard-Martinez, Cassandra Iacono, Marina Ilizarova, Chris Insco, Nathan Jobe, Rachael Jones, Sara Jones, Ronald Lance Justin, Joelle Wanette Kee, Bonny Lucille Kemper, Ian King, Tom Kinnaman, Cathy Kraeer, Jared Kramer, Todd Krutchen, Nicholas K Langenstein Sr., Henry Laperle, Lindsey Lavely, Janika Lewis, Lawrence Lewis, Ricardo Lopez, John Lopez Jr., Samuel Paul Losee, Dennis Mahoney, Mark Ira Manbeck, Logan Josha Martin, Joel Brill Maxwell, William Mcdavid, Kyle Luis Mendes, Rose Merheb, Jay Meyers, Justin Miedema, Shawn Millender, James A. Miller, Sonya Renee Miller-Holmes, Rodney M. Milton Jr., Ashley T. Miner, Donna Miraglia, Mara Montenegro, Gerald Morin, Devin Mosley, Kathryn Moulton, James B. Mullin, Daniel Prescott Murray, Rizwan Roshanali Nazarali, Abdiel Negron, Steve F. Opperman, Victoria Leigh Owens, Maxim Panasenko, Drake Caley Pattee, Paul Francis Pedron, Laura L. Peterse, Layton Edward Peterson, Daniel E. Pingree, Ricardo Polanco, Gary J. Pollick, Mark S. Recene, Jared Renfroe, Neil Richardson, Cynthia Rizzitello, Charles Joseph Robinson, Gregory Joseph Rocco, Gary Michael Rose, Prashanna Sangroula, Srinivas Rao Sankaraneni, Irene Nedime Seferian, Richard Francis Selsor, James Ray Shoulders, Angela Moody Shryock, Tanner K. Skalla, Matthew Sollars, Samar Sood, George Jr Sosa, Jason Sperber, Harry A. Sporidis, Rebecca Nan Squyres, Scott D. Steeves, Richard Reagan Stewart, Jackie David Strange, Zachary J. Takerian, Shawn Michael Thompson, James Cantrell Timbs, Chris Tompkinson, Wes Garet Van Der Voot, Joshua Daniel Waugh, Jonathan R. Weiss, Heather Maria Whipple, Robyn Wiedman, Emily Wild, Michael J.

Wolfe, Lauren Marie Young, Jon David Zemp, Eric Crawford, Vanessa Lynn Perry, and Sahni's Enterprises, Inc., ("Plaintiffs") file this Complaint complaining of FCA US, LLC and respectfully shows the Court as follows:

**INTRODUCTION**

1. FCA markets and sells the Jeep Wrangler 4xe and Jeep Grand Cherokee 4xe (collectively, the "Jeep Vehicles") as safe, dependable, rugged, high-performing, and emissions-friendly hybrid-electric vehicles.

2. This action arises out of FCA's failure to disclose and then adequately repair two uniform and widespread defects in 2020-2026 Jeep Wrangler 4xe and 2022-2026 Jeep Grand Cherokee 4xe vehicles (hereinafter "Defective Vehicles" or "Vehicles").

3. The first defect is in the electrical connector of the Electric Hydraulic Power Steering Pump ("EHPSP") in the 2021-2026 Jeep Wrangler vehicles. This EHPSP Defect causes overheating of combustible materials in the vehicle that can result in catastrophic and destructive fires, resulting in an unreasonable safety risk to the drivers and passengers of vehicles equipped with the Defective EHPSP. In fact, this EHPSP Defect has led to numerous vehicle fires. As a result of the EHPSP Defect, FCA issued Recall 21D in June 2026. The 21D recall instructs owners of the Defective Vehicles to park their vehicles outside and away from structures or other vehicles.

4. The second defect is in the lithium-ion battery (hereinafter the "Defective Battery") in the Jeep Vehicles that has led to numerous fires, safety recalls and guidance from FCA that imposes highly restrictive limitations on consumers' use of the vehicles. The defect causes the high voltage battery to overheat, which can result in catastrophic and destructive fires, resulting in an unreasonable safety risk to the drivers and passengers of vehicles equipped with the Defective

Battery. As a result of the Battery Defect, FCA issued recall nos. B9A, 95B and 68C between November 2023 and October 2025.

**PARTIES**

**Alabama Plaintiff**

**Richard Francis Selsor**

5. Plaintiff Richard Francis Selsor is a citizen and resident of the State of Alabama who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP60PW504933 (hereinafter, the "Vehicle") in March 2023. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

6. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

7. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

8. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle and was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

9. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

10. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

11. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

12. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Arizona Plaintiff**

**Lauren Marie Young**

13. Plaintiff is a citizen and resident of the State of Arizona who purchased a 2024 Jeep Grand Cherokee 4xe, VIN 1C4RJYB60R8509878 (hereinafter, the "Vehicle") in April 2024. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

14. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiffs chose their Vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiffs relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of lease.

15. Prior to purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff

reasonably expected that the Vehicle, including its electric battery and EHPSP, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

16. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and EHPSP within a reasonable time.

17. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicles' electric batteries. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recall forced Plaintiff to park the Vehicles outside and away from other vehicles, causing great burden and inconvenience and exposing the Vehicle to the elements.

18. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the Defective Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that they would be forced to park their Vehicle outdoors and away from other

vehicles, greatly inconveniencing Plaintiff and exposing the Vehicle to the heat and the elements, they would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

19. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

20. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Colorado Plaintiffs**

Magda Apodaca

21. Plaintiff Magda Apodaca is a citizen and resident of the State of Colorado who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR67PW516512 (hereinafter, the "Vehicle") in March 2023. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

22. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle

would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

23. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

24. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

25. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

26. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

27. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Sanaz Ashrafian**

28. Plaintiff Sanaz Ashrafian is a citizen and resident of the State of Colorado who purchased a 2025 Jeep Wrangler 4xe, VIN 1C4RJXP68SW519899 (hereinafter, the "Vehicle") in March 2025. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

29. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

30. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

31. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

32. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

33. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

34. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

35. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Abel Bonilla**

36. Plaintiff Abel Bonilla is a citizen and resident of the State of Colorado who leased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN6XRW295399 (hereinafter, the "Vehicle") in September 2024. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

37. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

38. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle.

Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

39. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

40. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

41. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other

vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

42. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

43. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Mengmeng Chao**

44. Plaintiff Mengmeng Chao is a citizen and resident of the State of Colorado who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP65PW579952 (hereinafter, the "Vehicle") in December 2022. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

45. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

46. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

47. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

48. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

49. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

50. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

51. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Trent Davis**

52. Plaintiff Trent Davis is a citizen and resident of the State of Colorado who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR63PW505118 (hereinafter, the "Vehicle") in June 2022. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

53. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle

would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

54. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

55. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

56. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

57. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

58. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

59. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Andy Deren**

60. Plaintiff Andy Deren is a citizen and resident of the State of Colorado who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXP62RW203084 (hereinafter, the "Vehicle") in January 2024. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

61. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and

safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

62. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

63. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

64. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle

outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

65. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

66. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

67. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Joseph Fischer**

68. Plaintiff Joseph Fischer is a citizen and resident of the State of Colorado who leased a 2025 Jeep Grand Cherokee 4xe, VIN 1C4RJYB68S8656553 (hereinafter, the "Vehicle") in April 2025. Plaintiff leased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

69. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

70. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

71. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

72. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished,

and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

73. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

74. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

75. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**William Foster**

76. Plaintiff William Foster is a citizen and resident of the State of Colorado who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN66RW192299 (hereinafter, the "Vehicle") in March

2024. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

77. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

78. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

79. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

80. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

81. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

82. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

83. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**<u>Rachael Jones</u>**

84. Plaintiff Rachael Jones is a citizen and resident of the State of Colorado who leased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXU61RW211052 (hereinafter, the "Vehicle") in June 2024. Plaintiff leased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

85. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

86. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

87. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

88. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

89. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

90. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

91. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Sara Jones**

92. Plaintiff Sara Jones is a citizen and resident of the State of Colorado who leased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN69RW323953 (hereinafter, the "Vehicle") in August 2024. Plaintiff leased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

93. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

94. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

95. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

96. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

97. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

98. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

99. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Lindsey Lavely**

100. Plaintiff Lindsey Lavely is a citizen and resident of the State of Colorado who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXN62PW686332 (hereinafter, the "Vehicle") in June 2023. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

101. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

102. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

103. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

104. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

105. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

106. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

107. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Dennis Mahoney**

108. Plaintiff Dennis Mahoney is a citizen and resident of the State of Colorado who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXR68RW190645 (hereinafter, the "Vehicle") in September 2024. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

109. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

110. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle.

Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

111. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

112. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

113. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other

vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

114. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

115. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Rose Merheb**

116. Plaintiff Rose Merheb is a citizen and resident of the State of Colorado who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP67NW101951 (hereinafter, the "Vehicle") in May 2022. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

117. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

118. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

119. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

120. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

121. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

122. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

123. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**James A. Miller**

124. Plaintiff James A. Miller is a citizen and resident of the State of Colorado who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN64RW191586 (hereinafter, the "Vehicle") in August 2024. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

125. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty

that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

126. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

127. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

128. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

129. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

130. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

131. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Rodney M. Milton, Jr.**

132. Plaintiff Rodney M. Milton, Jr. is a citizen and resident of the State of Colorado who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP60PW552996 (hereinafter, the "Vehicle") in April 2023. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

133. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid

features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

134. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

135. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

136. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle

outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

137. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

138. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

139. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Gerald Morin**

140. Plaintiff Gerald Morin is a citizen and resident of the State of Colorado who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR66NW211614 (hereinafter, the "Vehicle") in August 2024. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

141. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

142. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

143. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

144. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished,

and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

145. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

146. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

147. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Kathryn Moulton**

148. Plaintiff Kathryn Moulton is a citizen and resident of the State of Colorado who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP66PW516505 (hereinafter, the "Vehicle") in

October 2022. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

149. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

150. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

151. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

152. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

153. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

154. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

155. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**<u>Daniel Prescott Murray</u>**

156. Plaintiff Daniel Prescott Murray is a citizen and resident of the State of Colorado who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN6XRW202025 (hereinafter, the "Vehicle") in November 2024. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

157. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

158. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

159. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

160. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

161. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

162. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

163. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Rizwan Roshanali Nazarali**

164. Plaintiff Rizwan Roshanali Nazarali is a citizen and resident of the State of Colorado who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP60PW663404 (hereinafter, the "Vehicle") in March 2023. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

165. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

166. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

167. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

168. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

169. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

170. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

171. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Abdiel Negron**

172. Plaintiff Abdiel Negron is a citizen and resident of the State of Colorado who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN60RW317491 (hereinafter, the "Vehicle") in August 2024. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

173. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

174. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

175. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

176. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

177. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

178. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

179. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Steve F. Opperman**

180. Plaintiff Steve F. Opperman is a citizen and resident of the State of Colorado who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR63PW511226 (hereinafter, the "Vehicle") in September 2022. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

181. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

182. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle.

Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

183. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

184. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

185. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other

vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

186. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

187. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Layton Edward Peterson**

188. Plaintiff Layton Edward Peterson is a citizen and resident of the State of Colorado who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP63NW271045 (hereinafter, the "Vehicle") in September 2022. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

189. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

190. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

191. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

192. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

193. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

194. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

195. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Angela Moody Shryock**

196. Plaintiff Angela Moody Shryock is a citizen and resident of the State of Colorado who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP63NW272275 (hereinafter, the "Vehicle") in July 2022. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

197. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty

that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

198. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

199. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

200. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

201. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

202. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

203. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Tanner K. Skalla**

204. Plaintiff Tanner K. Skalla is a citizen and resident of the State of Colorado who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXR68MW822713 (hereinafter, the "Vehicle") in June 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

205. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

206. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

207. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

208. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

209. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

210. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

211. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Heather Maria Whipple**

212. Plaintiff Heather Maria Whipple is a citizen and resident of the State of Colorado who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN63RW323981 (hereinafter, the "Vehicle") in August 2024, which was manufactured, distributed and/or sold by Defendant..

Plaintiff purchased the vehicle for personal, family or household use. Plaintiff always used the vehicle in the normal and expected manner.

213. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

214. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

215. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

216. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

217. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

218. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

219. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jon David Zemp**

220. Plaintiff John David Zemp is a citizen and resident of the State of Colorado who purchased a 2025 Jeep Wrangler 4xe, VIN 1C4RJXR60SW571461 (hereinafter, the "Vehicle") in August 2025, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

221. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

222. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

223. The Vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle had less than 100,000 miles and was still covered by the

express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

224. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

225. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

226. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would

have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

227. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

## Connecticut Plaintiff

### Kyle Luis Mendes

228. Plaintiff Kyle Luis Mendes is a citizen and resident of the State of Connecticut who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP61NW267074 (hereinafter, the "Vehicle") in July 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

229. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

230. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

231. The Vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle had less than 100,000 miles and was still covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

232. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

233. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other

vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

234. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

235. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Delaware Plaintiffs**

**Aymen Chtourou**

236. Plaintiff Aymen Chtourou is a citizen and resident of the State of Delaware who leased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP66PW597036 (hereinafter, the "Vehicle") in July 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

237. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle

would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

238. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

239. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

240. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

241. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

242. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

243. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Florida Plaintiffs**

**John Bush**

244. Plaintiff John Bush is a citizen and resident of the State of Florida who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP69NW249387 (hereinafter, the "Vehicle") in September 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

245. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

246. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

247. The Vehicle had less than 100,000 miles and was still covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle had less than 100,000 miles and was still covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

248. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that

were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

249. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

250. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

251. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Kristin Carbone**

252. Plaintiff Kristin Carbone is a citizen and resident of the State of Florida who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP69MW716905 (hereinafter, the "Vehicle") in May 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

253. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

254. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

255. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

256. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

257. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

258. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

259. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Anthony Demeo**

260. Plaintiff Anthony Demeo is a citizen and resident of the State of Florida who leased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP68PW594528 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

261. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

262. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

263. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

264. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

265. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

266. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

267. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Khalil K. Eldaher**

268. Plaintiff Khalil K. Eldaher is a citizen and resident of the State of Florida who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP61MW787306 (hereinafter, the "Vehicle") in October 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

269. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

270. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

271. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

272. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

273. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

274. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

275. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Juli Fahrner**

276. Plaintiff Juli Fahrner is a citizen and resident of the State of Florida who leased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP61MW721368 (hereinafter, the "Vehicle") in July 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

277. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

278. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

279. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

280. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

281. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

282. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

283. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jan Andrew Freyman**

284. Plaintiff Jan Andrew Freyman is a citizen and resident of the State of Florida who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXN66PW684020 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

285. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

286. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

287. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

288. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

289. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

290. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

291. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**<u>Heather Hay</u>**

292. Plaintiff Heather Hay is a citizen and resident of the State of Florida who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP66NW149246 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

293. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

294. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

295. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

296. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

297. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

298. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

299. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Ian King**

300. Plaintiff Ian King is a citizen and resident of the State of Florida who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP66MW688626 (hereinafter, the "Vehicle") in April 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the

vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

301. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

302. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

303. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

304. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

305. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

306. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

307. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Cathy Kraeer**

308. Plaintiff Cathy Kraeer is a citizen and resident of the State of Florida who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR69PW565341 (hereinafter, the "Vehicle") in October 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

309. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

310. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

311. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

312. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

313. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

314. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

315. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**John Lopez Jr.**

316. Plaintiff John Lopez Jr. is a citizen and resident of the State of Florida who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP65PW569423 (hereinafter, the "Vehicle") in October 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

317. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

318. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

319. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

320. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

321. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

322. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

323. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Mark Ira Manbeck**

324. Plaintiff Mark Ira Manbeck is a citizen and resident of the State of Florida who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP67PW625037 (hereinafter, the "Vehicle") in January 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

325. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

326. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

327. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

328. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

329. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

330. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

331. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Joel Brill Maxwell**

332. Plaintiff Joel Brill Maxwell is a citizen and resident of the State of Florida who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP68PW610420 (hereinafter, the "Vehicle") in February 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

333. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

334. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

335. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

336. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

337. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

338. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

339. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Justin Miedema**

340. Plaintiff Justin Miedema is a citizen and resident of the State of Florida who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXR62MW822951 (hereinafter, the "Vehicle") in September 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

341. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

342. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

343. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

344. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

345. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

346. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

347. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Ashley T. Miner**

348. Plaintiff Ashley T. Miner is a citizen and resident of the State of Florida who leased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP69MW765909 (hereinafter, the "Vehicle") in January 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

349. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the

vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

350. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

351. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

352. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

353. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

354. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

355. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**<u>Ricardo Polanco</u>**

356. Plaintiff Ricardo Polanco is a citizen and resident of the State of Florida who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXN60PW663678 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the

vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

357. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

358. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

359. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

360. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

361. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

362. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

363. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**James Ray Shoulders**

364. Plaintiff James Ray Shoulders is a citizen and resident of the State of Florida who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR62NW121375 (hereinafter, the "Vehicle") in March 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

365. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

366. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

367. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

368. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

369. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

370. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

371. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Matthew Sollars**

372. Plaintiff Matthew Sollars is a citizen and resident of the State of Florida who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP69PW519544 (hereinafter, the "Vehicle") in December 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

373. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

374. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

375. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

376. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

377. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

378. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

379. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**George Jr Sosa**

380. Plaintiff George Jr Sosa is a citizen and resident of the State of Florida who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP65PW604431 (hereinafter, the "Vehicle") in January 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

381. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

382. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

383. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

384. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

385. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

386. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

387. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Georgia Plaintiffs**

**Sahni's Enterprises, Inc.**

388. Plaintiff Sahni's Enterprises, Inc. is a corporation with its principal place of business in Cummings, Georgia. Plaintiff purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR64NW236530 (hereinafter, the "Vehicle") in July 2022. Plaintiffs always used the vehicle in the normal and expected manner.

389. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of lease.

390. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

391. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

392. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

393. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that they would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

394. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

395. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Aimee Christine Cancino**

396. Plaintiff Aimee Christine Cancino is a citizen and resident of the State of Georgia who leased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP61NW274610 (hereinafter, the "Vehicle") in October 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the Vehicle in the normal and expected manner.

397. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing

quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

398. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

399. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

400. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

401. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

402. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

403. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Alexis K. Harper**

404. Plaintiff Alexis K. Harper is a citizen and resident of the State of Georgia who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP62NW218787 (hereinafter, the "Vehicle") in May 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

405. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

406. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

407. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

408. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

409. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

410. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

411. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Robert Travis Hatt**

412. Plaintiff Robert Travis Hatt is a citizen and resident of the State of Georgia who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP62NW218787 (hereinafter, the "Vehicle") in May 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the

vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

413. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

414. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

415. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

416. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

417. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

418. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

419. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Drake Caley Pattee**

420. Plaintiff Drake Caley Pattee is a citizen and resident of the State of Georgia who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR65NW112783 (hereinafter, the "Vehicle") in April 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

421. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

422. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

423. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

424. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

425. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

426. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

427. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Gregory Joseph Rocco**

428. Plaintiff Gregory Joseph Rocco is a citizen and resident of the State of Georgia who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB68N8746581 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

429. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

430. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

431. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

432. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

433. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

434. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

435. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Samar Sood**

436. Plaintiff Samar Sood is a citizen and resident of the State of Georgia who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYE64N8759128 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

437. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

438. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

439. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

440. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

441. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

442. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

443. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Idaho Plaintiffs**

**Josh Graham**

444. Plaintiff Josh Graham is a citizen and resident of the State of Idaho who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP63PW566584 (hereinafter, the "Vehicle") in September 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

445. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty

that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

446. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

447. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

448. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

449. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

450. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

451. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jared Henderson**

452. Plaintiff Jared Henderson is a citizen and resident of the State of Idaho who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP65NW233011 (hereinafter, the "Vehicle") in September 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

453. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

454. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

455. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

456. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

457. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

458. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

459. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Paul Francis Pedron**

460. Plaintiff Paul Francis Pedron is a citizen and resident of the State of Idaho who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP61PW516203 (hereinafter, the "Vehicle") in November 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff

purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

461. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

462. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

463. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

464. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

465. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

466. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

467. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Charles Joseph Robinson**

468. Plaintiff Charles Joseph Robinson is a citizen and resident of the State of Idaho who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP6XMW742199 (hereinafter, the "Vehicle") in October 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

469. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

470. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

471. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

472. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

473. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

474. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

475. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Illinois Plaintiffs**

**Arnold Carlstrom**

476. Plaintiff Arnold Carlstrom is a citizen and resident of the State of Illinois who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP69MW642174 (hereinafter, the "Vehicle") in May 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

477. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

478. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

479. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

480. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

481. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

482. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

483. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Alex Gregor**

484. Plaintiff Alex Gregor is a citizen and resident of the State of Illinois who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP64PW605537 (hereinafter, the "Vehicle") in February 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

485. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

486. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

487. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

488. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

489. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

490. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

491. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Tom Kinnaman**

492. Plaintiff Tom Kinnaman is a citizen and resident of the State of Illinois who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXR65MW867639 (hereinafter, the "Vehicle") in April 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

493. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

494. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

495. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

496. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

497. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

498. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

499. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jay Meyers**

500. Plaintiff Jay Meyers is a citizen and resident of the State of Illinois who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP67PW536813 (hereinafter, the "Vehicle") in June 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

501. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

502. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

503. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

504. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

505. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

506. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

507. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Maxim Panasenko**

508. Plaintiff Maxim Panasenko is a citizen and resident of the State of Illinois who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP66NW267782 (hereinafter, the "Vehicle") in July 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the

vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

509. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

510. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

511. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

512. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

513. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

514. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

515. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Robyn Wiedman**

516. Plaintiff Robyn Wiedman is a citizen and resident of the State of Illinois who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXR6XMW633190 (hereinafter, the "Vehicle") in October 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

517. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

518. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

519. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

520. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

521. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

522. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

523. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Iowa Plaintiffs**

**Alexander Panyavong Baccam**

524. Plaintiff Alexander Panyavong Baccam is a citizen and resident of the State of Iowa who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP6XPW513025 (hereinafter, the "Vehicle") in September 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

525. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

526. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

527. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

528. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

529. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

530. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

531. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Logan Baker Harrington**

532. Plaintiff Logan Baker Harrington is a citizen and resident of the State of Iowa who leased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB64N8756685 (hereinafter, the "Vehicle") in December 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

533. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

534. Prior to Plaintiff's lease , neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

535. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

536. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

537. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

538. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

539. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jared Kramer**

540. Plaintiff Jared Kramer is a citizen and resident of the State of Iowa who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR6XNW100967 (hereinafter, the "Vehicle") in March 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

541. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

542. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

543. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

544. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

545. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

546. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

547. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Logan Josha Martin**

548. Plaintiff Logan Josha Martin is a citizen and resident of the State of Iowa who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYD6XN8717287 (hereinafter, the "Vehicle") in March 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

549. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

550. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

551. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

552. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

553. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

554. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

555. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Gary Michael Rose**

556. Plaintiff Gary Michael Rose is a citizen and resident of the State of Iowa who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP64PW557537 (hereinafter, the "Vehicle") in October 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff

purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

557. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

558. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

559. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

560. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

561. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

562. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

563. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Michael J. Wolfe**

564. Plaintiff Michael J. Wolfe is a citizen and resident of the State of Iowa who purchased a 2023 Jeep Grand Cherokee 4xe, VIN 1C4RJYB66P8792106 (hereinafter, the "Vehicle") in July 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

565. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

566. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

567. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

568. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

569. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

570. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

571. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Kansas Plaintiff**

**Amber Dawn Folkert**

572. Plaintiff Amber Dawn Folkert is a citizen and resident of the State of Kansas who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP65MW758066 (hereinafter, the "Vehicle") in August 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

573. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

574. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

575. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

576. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

577. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

578. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

579. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Kentucky Plaintiffs**

**Miranda Patrick Gaddis**

580. Plaintiff Miranda Patrick Gaddis is a citizen and resident of the State of Kentucky who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR64NW229870 (hereinafter, the "Vehicle") in September 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

581. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

582. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

583. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

584. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

585. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

586. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

587. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Robert E. Grigsby**

588. Plaintiff Robert E. Grigsby is a citizen and resident of the State of Kentucky who leased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP61NW114503 (hereinafter, the "Vehicle") in January 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff leased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

589. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing

quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

590. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

591. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

592. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

593. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

594. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

595. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Maryland Plaintiffs**

**Darius Bailey**

596. Plaintiff Darius Bailey is a citizen and resident of the State of Maryland who leased a 2023 Jeep Grand Cherokee 4xe, VIN 1C4RJYD65PC595910 (hereinafter, the "Vehicle") in March 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff leased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

597. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

598. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

599. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

600. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished,

and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

601. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

602. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

603. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Soha Mohamad Eid Bizri**

604. Plaintiff Soha Mohamed Eid Bizri is a citizen and resident of the State of Maryland who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXR60RW229325 (hereinafter, the

"Vehicle") in April 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

605. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

606. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

607. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

608. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived

Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

609. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

610. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

611. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Terry Cahalane**

612. Plaintiff Terry Cahalane is a citizen and resident of the State of Maryland who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP68NW199145 (hereinafter, the "Vehicle") in February 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

613. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

614. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

615. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was

covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

616. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

617. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

618. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have

paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

619. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Cheryl C. Clapprood**

620. Plaintiff Cheryl C. Clapprood is a citizen and resident of the State of Maryland who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP67NW275003 (hereinafter, the "Vehicle") in September 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

621. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

622. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

623. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

624. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

625. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

626. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

627. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**George Edward Dixon III**

628. Plaintiff George Edward Dixon III is a citizen and resident of the State of Maryland who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP69PW554794 (hereinafter, the "Vehicle") on or around October 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

629. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

630. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

631. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

632. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

633. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

634. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

635. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Robert Andrew Durant**

636. Plaintiff Robert Andrew Durant is a citizen and resident of the State of Maryland who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP68MW736658 (hereinafter, the "Vehicle") in May 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

637. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

638. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

639. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

640. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

641. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

642. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

643. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Andrew T. Effross**

644. Plaintiff Andrew T. Effross is a citizen and resident of the State of Maryland who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP65NW276120 (hereinafter, the "Vehicle") in August 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

645. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

646. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

647. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

648. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

649. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

650. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

651. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**James Forney**

652. Plaintiff James Forney is a citizen and resident of the State of Maryland who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4RJYE69P8784447 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the

vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

653. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

654. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

655. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

656. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

657. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

658. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

659. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jordan Elizabeth Dawn Frye**

660. Plaintiff Jordan Elizabeth Dawn Frye is a citizen and resident of the State of Maryland who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXN62PW629712 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

661. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

662. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

663. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

664. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

665. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

666. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

667. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Joseph Wayne Frye**

668. Plaintiff Joseph Wayne Frye is a citizen and resident of the State of Maryland who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP63MW642817 (hereinafter, the "Vehicle") in July 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

669. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

670. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

671. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

672. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

673. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

674. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

675. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Martha W. Hahn-Fournier**

676. Plaintiff Martha W. Hahn-Fournier is a citizen and resident of the State of Maryland who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP66MW742295 (hereinafter, the "Vehicle") in August 2025, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

677. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

678. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

679. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

680. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

681. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

682. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

683. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Doreen Harder**

684. Plaintiff Doreen Harder is a citizen and resident of the State of Maryland who purchased a 2023 Jeep Grand Cherokee 4xe, VIN 1C4RJYD60P8798917 (hereinafter, the "Vehicle") in January 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

685. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

686. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

687. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

688. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

689. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

690. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

691. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Joelle Wanette Kee**

692. Plaintiff Joelle Wanette Kee is a citizen and resident of the State of Maryland who purchased a 2024 Jeep Grand Cherokee 4xe, VIN 1C4RJYB64R8547338 (hereinafter, the "Vehicle") in May 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

693. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

694. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

695. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

696. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

697. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

698. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

699. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Nicholas K. Langenstein Sr.**

700. Plaintiff Nicholas K. Langenstein Sr. is a citizen and resident of the State of Maryland who purchased a 2023 Jeep Grand Cherokee 4xe, VIN 1C4RJYB61P8908845 (hereinafter, the "Vehicle") in April 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

701. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

702. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

703. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

704. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

705. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

706. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

707. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Lawrence Lewis**

708. Plaintiff Lawrence Lewis is a citizen and resident of the State of Maryland who leased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP67PW514648 (hereinafter, the "Vehicle") in December 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff

purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

709. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

710. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

711. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

712. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

713. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

714. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

715. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Shawn Millender**

716. Plaintiff Shawn Millender is a citizen and resident of the State of Maryland who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB60N8758904 (hereinafter, the "Vehicle") in April 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

717. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

718. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

719. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

720. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

721. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

722. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

723. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Mara Montenegro**

724. Plaintiff Mara Montenegro is a citizen and resident of the State of Maryland who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP67NW279472 (hereinafter, the "Vehicle") in August 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

725. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

726. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

727. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

728. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

729. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

730. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

731. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Victoria Leigh Owens**

732. Plaintiff Victoria Leigh Owens is a citizen and resident of the State of Maryland who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXN6XPW689883 (hereinafter, the "Vehicle") in June 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

733. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

734. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

735. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

736. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

737. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

738. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

739. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Daniel E. Pingree**

740. Plaintiff Daniel E. Pingree is a citizen and resident of the State of Maryland who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXN69PW685890 (hereinafter, the "Vehicle") in June 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

741. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

742. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

743. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

744. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

745. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

746. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

747. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Mark S. Recene**

748. Plaintiff Mark S. Recene is a citizen and resident of the State of Maryland who purchased a 2023 Jeep Grand Cherokee 4xe, VIN 1C4RJYE68PC615873 (hereinafter, the "Vehicle") in April 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

749. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

750. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

751. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

752. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

753. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

754. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

755. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Srinivas Rao Sankaraneni**

756. Plaintiff Srinivas Rao Sankaraneni is a citizen and resident of the State of Maryland who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR60NW269489 (hereinafter, the "Vehicle") in June 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

757. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

758. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

759. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

760. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

761. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

762. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

763. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Harry A. Sporidis**

764. Plaintiff Harry A. Sporidis is a citizen and resident of the State of Maryland who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR67NW115040 (hereinafter, the "Vehicle") in April 2022, which was manufactured, distributed and/or sold by Defendant.

Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

765. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

766. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

767. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

768. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

769. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

770. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

771. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Massachusetts Plaintiff**

**Scott D. Steeves**

772. Plaintiff Scott D. Steeves is a citizen and resident of the State of Massachusetts who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXR65MW742642 (hereinafter, the "Vehicle") in September 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

773. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

774. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

775. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was

covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

776. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

777. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

778. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have

paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

779. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Michigan Plaintiffs**

**Frederic M. Gardner**

780. Plaintiff Frederic M. Gardner is a citizen and resident of the State of Michigan who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR62PW604349 (hereinafter, the "Vehicle") in January 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

781. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

782. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

783. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

784. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

785. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

786. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

787. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jung Greer**

788. Plaintiff Jung Greer is a citizen and resident of the State of Michigan who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXN6XPW610499 (hereinafter, the "Vehicle") in July 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

789. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

790. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

791. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

792. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

793. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

794. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

795. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Minnesota Plaintiff**

**Robert Kenneth Hintz**

796. Plaintiff Robert Kenneth Hintz is a citizen and resident of the State of Minnesota who leased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP63MW759183 (hereinafter, the "Vehicle") in August 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

797. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely

charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

798. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

799. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

800. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle

outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

801. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

802. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

803. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**<u>Nevada Plaintiffs</u>**

**<u>Ana Christian</u>**

804. Plaintiff Ana Christian is a citizen and resident of the State of Nevada who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP60MW850198 (hereinafter, the "Vehicle") in October 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the

vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

805. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

806. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

807. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

808. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

809. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

810. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

811. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Mauricio Hernandez**

812. Plaintiff Mauricio Hernandez is a citizen and resident of the State of Nevada who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR65NW206145 (hereinafter, the "Vehicle") in June 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

813. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

814. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

815. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

816. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

817. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

818. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

819. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Michael Hertweck**

820. Plaintiff Michael Hertweck is a citizen and resident of the State of Nevada who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXR63MW822084 (hereinafter, the "Vehicle") in October 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

821. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

822. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

823. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

824. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

825. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

826. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

827. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Chris Insco**

828. Plaintiff Chris Insco is a citizen and resident of the State of Nevada who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR62NW198893 (hereinafter, the "Vehicle") in June 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

829. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

830. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

831. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

832. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

833. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

834. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

835. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Ronald Lance Justin**

836. Plaintiff Ronald Lance Justin is a citizen and resident of the State of Nevada who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYC67N8715417 (hereinafter, the "Vehicle") in November 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

837. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

838. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

839. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

840. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

841. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

842. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

843. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Devin Mosley**

844. Plaintiff Devin Mosley is a citizen and resident of the State of Nevada who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP65NW198275 (hereinafter, the "Vehicle") in July 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

845. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

846. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

847. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

848. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

849. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

850. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

851. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Irene Nedime Seferian**

852. Plaintiff Irene Nedime Seferian is a citizen and resident of the State of Nevada who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP66NW278197 (hereinafter, the "Vehicle") in September 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

853. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

854. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

855. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

856. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

857. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

858. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

859. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**New Hampshire Plaintiffs**

**Christina Andreoli**

860. Plaintiff Christina Andreoli is a citizen and resident of the State of New Hampshire who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYC67N8756047 (hereinafter, the "Vehicle") in February 2023, which was manufactured, distributed and/or sold by Defendant.

Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

861. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

862. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

863. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

864. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

865. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

866. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

867. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jessica M. Hart**

868. Plaintiff Jessica M. Hart is a citizen and resident of the State of New Hampshire who leased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP66MW854367 (hereinafter, the "Vehicle") in October 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

869. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

870. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

871. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

872. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

873. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

874. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

875. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

## New Jersey Plaintiffs

### Crystal Carlino

876. Plaintiff Crystal Carlino is a citizen and resident of the State of New Jersey who leased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR65NW153348 (hereinafter, the "Vehicle") in March 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

877. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

878. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

879. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

880. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

881. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less

for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

882. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

883. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Lorin Cimato**

884. Plaintiff Lorin Cimato is a citizen and resident of the State of New Jersey who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP60MW643567 (hereinafter, the "Vehicle") in February 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

885. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

886. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

887. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

888. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

889. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

890. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

891. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Michael J. Desantis**

892. Plaintiff Michael J. Desantis is a citizen and resident of the State of New Jersey who leased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP68NW122081 (hereinafter, the "Vehicle") in August 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

893. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing

quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

894. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

895. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

896. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

897. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

898. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

899. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**John S. Dixon**

900. Plaintiff John S. Dixon is a citizen and resident of the State of New Jersey who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP61MW781828 (hereinafter, the "Vehicle") in October 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

901. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

902. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

903. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

904. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

905. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

906. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

907. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Henry Garcia**

908. Plaintiff Henry Garcia is a citizen and resident of the State of New Jersey who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP66NW274506 (hereinafter, the "Vehicle") in July 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the

vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

909. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

910. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

911. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

912. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

913. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

914. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

915. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Kathleen Garcia**

916. Plaintiff Kathleen Garcia is a citizen and resident of the State of New Jersey who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB6XN8726316 (hereinafter, the "Vehicle") in September 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

917. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

918. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

919. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

920. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

921. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

922. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

923. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Justin Gordnick**

924. Plaintiff Justin Gordnick is a citizen and resident of the State of New Jersey who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXR64MW738758 (hereinafter, the "Vehicle") in May 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

925. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

926. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

927. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

928. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

929. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

930. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

931. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Donna Miraglia**

932. Plaintiff Donna Miraglia is a citizen and resident of the State of New Jersey who leased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB65N8747249 (hereinafter, the "Vehicle") in January 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

933. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

934. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

935. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

936. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

937. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

938. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

939. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Laura L. Peterse**

940. Plaintiff Laura L. Peterse is a citizen and resident of the State of New Jersey who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYE66N8748938 (hereinafter, the "Vehicle") in November 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

941. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

942. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

943. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

944. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

945. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

946. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

947. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Gary J. Pollick**

948. Plaintiff Gary J. Pollick is a citizen and resident of the State of New Jersey who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP63NW184133 (hereinafter, the "Vehicle") in April 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

949. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

950. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

951. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

952. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

953. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

954. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

955. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jason Sperber**

956. Plaintiff Jason Sperber is a citizen and resident of the State of New Jersey who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR63PW515065 (hereinafter, the "Vehicle") in September 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

957. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

958. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

959. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

960. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

961. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

962. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

963. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**New York Plaintiffs**

**Monika Baez**

964. Plaintiff Monika Baez is a citizen and resident of the State of New York who leased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP65PW625859 (hereinafter, the "Vehicle") in June 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the

vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

965. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

966. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

967. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

968. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

969. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

970. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

971. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jamie Caponigro**

972. Plaintiff Jamie Caponigro is a citizen and resident of the State of New York who purchased a 2023 Jeep Grand Cherokee 4xe, VIN 1C4RJYB62P8792619 (hereinafter, the "Vehicle") in November 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

973. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

974. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

975. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

976. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

977. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

978. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

979. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Marina Ilizarova**

980. Plaintiff Marina Ilizarova is a citizen and resident of the State of New York who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXR62MW766042 (hereinafter, the "Vehicle") in December 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

981. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

982. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

983. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

984. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

985. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

986. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

987. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**James B. Mullin**

988. Plaintiff James B. Mullin is a citizen and resident of the State of New York who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYD69N8717121 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

989. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

990. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

991. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

992. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

993. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

994. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

995. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Chris Tompkinson**

996. Plaintiff Chris Tompkinson is a citizen and resident of the State of New York who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB6XN8721214 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

997. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

998. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

999. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1000. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1001. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1002. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1003. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jonathan R. Weiss**

1004. Plaintiff Jonathan R Weiss is a citizen and resident of the State of New York who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP6XNW193363 (hereinafter, the "Vehicle") in May 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1005. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1006. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1007. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1008. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1009. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1010. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1011. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**North Carolina Plaintiffs**

**Brandy Gaddis**

1012. Plaintiff Brandy Gaddis is a citizen and resident of the State of North Carolina who leased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR65PW586137 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff leased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1013. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1014. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1015. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1016. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished,

and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1017. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1018. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1019. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jackie David Strange**

1020. Plaintiff Jackie David Strange is a citizen and resident of the State of North Carolina who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR67PW517496 (hereinafter, the

"Vehicle") in January 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1021. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1022. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1023. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1024. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived

Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1025. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1026. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1027. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Joshua Daniel Waugh**

1028. Plaintiff Joshua Daniel Waugh is a citizen and resident of the State of North Carolina who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYD62N8716988 (hereinafter, the "Vehicle") in November 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1029. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1030. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1031. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was

covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1032. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1033. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1034. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have

paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1035. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

## North Dakota Plaintiffs

### Ronaldo A. Cobrado

1036. Plaintiff Ronaldo A. Cobrado is a citizen and resident of the State of North Dakota who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP68PW515310 (hereinafter, the "Vehicle") in October 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1037. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1038. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1039. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1040. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1041. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1042. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1043. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Bonny Lucille Kemper**

1044. Plaintiff Bonny Lucille Kemper is a citizen and resident of the State of North Dakota who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP62PW576877 (hereinafter, the "Vehicle") in November 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1045. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1046. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1047. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1048. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1049. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1050. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1051. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Ohio Plaintiff**

**Sonya Renee Miller-Holmes**

1052. Plaintiff Sonya Renee Miller-Holmes is a citizen and resident of the State of Ohio who purchased a 2024 Jeep Grand Cherokee 4xe, VIN 1C4RJYB66R8505107 (hereinafter, the "Vehicle") in October 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1053. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery

fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1054. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1055. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1056. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle

outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1057. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1058. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1059. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Oregon Plaintiff**

**Richard Campos**

1060. Plaintiff Richard Campos is a citizen and resident of the State of Oregon who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXP62RW128631 (hereinafter, the "Vehicle") in December 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff

purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1061. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1062. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1063. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1064. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1065. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1066. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1067. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**<u>Pennsylvania Plaintiff</u>**

**Matthew Hajek**

1068. Plaintiff Matthew Hajek is a citizen and resident of the State of Pennsylvania who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR66NW155870 (hereinafter, the "Vehicle") in April 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1069. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1070. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1071. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was

covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1072. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1073. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1074. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have

paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1075. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

## South Carolina Plaintiffs

### McKenzie Hope Bazen

1076. Plaintiff Mckenzie Hope Bazen is a citizen and resident of the State of South Carolina who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB67N8715435 (hereinafter, the "Vehicle") in April 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1077. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1078. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1079. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1080. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1081. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1082. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1083. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Heidi Irene Drake**

1084. Plaintiff Heidi Irene Drake is a citizen and resident of the State of South Carolina who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB61N8759401 (hereinafter, the "Vehicle") in April 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1085. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1086. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1087. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1088. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1089. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1090. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1091. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Christopher Hair**

1092. Plaintiff Christopher Hair is a citizen and resident of the State of South Carolina who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP68NW182751 (hereinafter, the "Vehicle") in April 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1093. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1094. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1095. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1096. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1097. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1098. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1099. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

## **Tennessee Plaintiffs**

### **Scott Dewaters**

1100. Plaintiff Scott Dewaters is a citizen and resident of the State of Tennessee who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB62N8500920 (hereinafter, the "Vehicle") in May 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1101. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1102. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1103. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1104. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished,

and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1105. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1106. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1107. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jerry Milton George**

1108. Plaintiff Jerry Milton George is a citizen and resident of the State of Tennessee who leased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB66N8756798 (hereinafter, the "Vehicle") in

January 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff leased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1109. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1110. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1111. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1112. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived

Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1113. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1114. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1115. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Chase Hale**

1116. Plaintiff Chase Hale is a citizen and resident of the State of Tennessee who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP67PW605807 (hereinafter, the "Vehicle") in April 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1117. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1118. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1119. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was

covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1120. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1121. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1122. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have

paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1123. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Nathan Jobe**

1124. Plaintiff Nathan Jobe is a citizen and resident of the State of Tennessee who leased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYC67N8760339 (hereinafter, the "Vehicle") in April 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff leased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1125. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of lease.

1126. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1127. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1128. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1129. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less

for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1130. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1131. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**William McDavid**

1132. Plaintiff William McDavid is a citizen and resident of the State of Tennessee who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP62PW502410 (hereinafter, the "Vehicle") in October 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1133. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1134. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1135. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1136. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1137. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1138. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1139. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Jared Renfroe**

1140. Plaintiff Jared Renfroe is a citizen and resident of the State of Tennessee who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP68PW608649 (hereinafter, the "Vehicle") in April 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1141. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1142. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1143. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1144. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1145. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1146. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1147. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Cynthia Rizzitello**

1148. Plaintiff Cynthia Rizzitello is a citizen and resident of the State of Tennessee who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP69MW767305 (hereinafter, the "Vehicle") in July 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1149. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1150. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1151. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1152. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1153. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1154. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1155. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Richard Reagan Stewart**

1156. Plaintiff Richard Reagan Stewart is a citizen and resident of the State of Tennessee who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB63N8747296 (hereinafter, the "Vehicle") in October 2023, which was manufactured, distributed and/or sold by Defendant.

Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1157. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1158. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1159. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1160. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1161. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1162. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1163. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**James Cantrell Timbs**

1164. Plaintiff James Cantrell Timbs is a citizen and resident of the State of Tennessee who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP63NW171155 (hereinafter, the "Vehicle") in May 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1165. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1166. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1167. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1168. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1169. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1170. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1171. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

## **Texas Plaintiffs**

### **Malinda Denise Dake**

1172. Plaintiff Malinda Denise Dake is a citizen and resident of the State of Texas who leased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR67PW525002 (hereinafter, the "Vehicle") in October 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff leased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1173. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1174. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1175. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1176. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1177. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less

for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1178. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1179. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**James Richard Fletcher**

1180. Plaintiff James Richard Fletcher is a citizen and resident of the State of Texas who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYB60N8716393 (hereinafter, the "Vehicle") in October 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1181. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1182. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1183. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1184. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1185. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1186. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1187. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Hollie Hubbard-Martinez**

1188. Plaintiff Hollie Hubbard-Martinez is a citizen and resident of the State of Texas who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN68RW194474 (hereinafter, the "Vehicle") in November 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1189. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1190. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1191. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1192. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1193. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1194. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1195. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Janika Lewis**

1196. Plaintiff Janika Lewis is a citizen and resident of the State of Texas who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP62NW206171 (hereinafter, the "Vehicle") in April 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1197. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff

chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1198. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1199. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1200. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters

worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1201. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1202. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1203. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Ricardo Lopez**

1204. Plaintiff Ricardo Lopez is a citizen and resident of the State of Texas who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN60RW196106 (hereinafter, the "Vehicle") in January 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the

vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1205. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1206. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1207. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1208. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1209. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1210. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1211. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Vanessa Lynn Perry**

1212. Plaintiff Vanessa Lynn Perry is a citizen and resident of the State of Texas who leased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP66NW206237 (hereinafter, the "Vehicle") in July 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff leased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1213. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1214. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1215. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1216. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1217. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1218. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1219. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Rebecca Nan Squyres**

1220. Plaintiff Rebecca Nan Squyres is a citizen and resident of the State of Texas who purchased a 2022 Jeep Grand Cherokee 4xe, VIN 1C4RJYE67N8735700 (hereinafter, the "Vehicle") in December 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1221. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1222. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1223. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1224. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1225. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1226. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1227. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Shawn Michael Thompson**

1228. Plaintiff Shawn Michael Thompson is a citizen and resident of the State of Texas who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR67PW604864 (hereinafter, the "Vehicle") in May 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1229. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1230. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1231. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1232. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1233. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1234. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1235. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Wes Garet Van Der Voot**

1236. Plaintiff Wes Garet Van Der Voot is a citizen and resident of the State of Texas who purchased a 2024 Jeep Grand Cherokee 4xe, VIN 1C4RJYE62R8916533 (hereinafter, the "Vehicle") in November 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1237. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1238. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1239. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1240. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1241. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1242. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1243. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Virginia Plaintiffs**

**Cynthia Gunera**

1244. Plaintiff Cynthia Gunera is a citizen and resident of the State of Virginia who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP61NW108913 (hereinafter, the "Vehicle") in January 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1245. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery

fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1246. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1247. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1248. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle

outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1249. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1250. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1251. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Cassandra Iacono**

1252. Plaintiff Cassandra Iacono is a citizen and resident of the State of Virginia who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP61PW519697 (hereinafter, the "Vehicle") in March 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1253. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1254. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1255. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1256. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished,

and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1257. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1258. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1259. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Henry LaPerle**

1260. Plaintiff Henry LaPerle is a citizen and resident of the State of Virginia who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP63PW517028 (hereinafter, the "Vehicle") in February

2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1261. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1262. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1263. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1264. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived

Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1265. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1266. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1267. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Samuel Paul Losee**

1268. Plaintiff Samuel Paul Losee is a citizen and resident of the State of Virginia who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXR63RW303823 (hereinafter, the "Vehicle") in April 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1269. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1270. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1271. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was

covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1272. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1273. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1274. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have

paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1275. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Neil Richardson**

1276. Plaintiff Neil Richardson is a citizen and resident of the State of Virginia who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXN62PW611209 (hereinafter, the "Vehicle") in February 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1277. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1278. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably

expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1279. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1280. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1281. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially

less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1282. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1283. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Prashanna Sangroula**

1284. Plaintiff Prashanna Sangroula is a citizen and resident of the State of Virginia who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR62PW583387 (hereinafter, the "Vehicle") in January 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1285. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1286. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1287. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1288. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1289. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1290. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1291. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Washington Plaintiff**

**Chad Ayers**

1292. Plaintiff Chad Ayers is a citizen and resident of the State of Washington who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP67MW682818 (hereinafter, the "Vehicle") in April 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1293. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery

fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1294. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1295. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1296. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle

outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1297. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1298. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1299. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

## Wisconsin Plaintiffs

### Alivia Bauman

1300. Plaintiff Alivia Bauman is a citizen and resident of the State of Wisconsin who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXP69PW504932 (hereinafter, the "Vehicle") in October 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff

purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1301. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1302. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1303. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1304. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of

Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1305. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1306. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1307. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Maria Castro**

1308. Plaintiff Maria Castro is a citizen and resident of the State of Wisconsin who purchased a 2023 Jeep Grand Cherokee 4xe, VIN 1C4RJYD66N8757981 (hereinafter, the "Vehicle") in April 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1309. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1310. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1311. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1312. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1313. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1314. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1315. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Brian J. Czapla**

1316. Plaintiff Brian J. Czapla is a citizen and resident of the State of Wisconsin who purchased a 2021 Jeep Wrangler 4xe, VIN 1C4JJXP65MW675754 (hereinafter, the "Vehicle") in May 2021, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1317. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1318. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1319. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1320. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1321. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1322. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1323. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**David M. Gorwitz**

1324. Plaintiff David M. Gorwitz is a citizen and resident of the State of Wisconsin who leased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXR69NW169990 (hereinafter, the "Vehicle") in May 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff leased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1325. Plaintiff made the decision to lease the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In leasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1326. Prior to Plaintiff's lease, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function

normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1327. The Vehicle was covered by the express warranty when the vehicle was leased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1328. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1329. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after leasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the

elements, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1330. At the time of the lease, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have leased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1331. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Todd Krutchen**

1332. Plaintiff Todd Krutchen is a citizen and resident of the State of Wisconsin who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJXR63PW577145 (hereinafter, the "Vehicle") in November 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1333. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1334. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1335. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1336. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1337. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle

presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1338. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1339. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Zachary J. Takerian**

1340. Plaintiff Zachary J. Takerian is a citizen and resident of the State of Wisconsin who purchased a 2024 Jeep Wrangler 4xe, VIN 1C4RJXN62RW361069 (hereinafter, the "Vehicle") in October 2024, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1341. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for

manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1342. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1343. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1344. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1345. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1346. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1347. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Emily Wild**

1348. Plaintiff Emily Wild is a citizen and resident of the State of Wisconsin who purchased a 2022 Jeep Wrangler 4xe, VIN 1C4JJXP62NW213766 (hereinafter, the "Vehicle") in June 2022, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1349. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1350. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1351. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1352. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished,

and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1353. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that she would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1354. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1355. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Wyoming Plaintiff**

**Eric Crawford**

1356. Plaintiff Eric Crawford is a citizen and resident of the State of Wyoming who purchased a 2023 Jeep Wrangler 4xe, VIN 1C4JJX67PW555152 (hereinafter, the "Vehicle") in January 2023, which was manufactured, distributed and/or sold by Defendant. Plaintiff purchased the vehicle for personal, family or household use. The Plaintiff always used the vehicle in the normal and expected manner.

1357. Plaintiff made the decision to purchase the Vehicle after considering FCA's representations about the vehicle, including the reported range and effective mileage. Plaintiff chose the vehicle based on the vehicle's represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality vehicles. In purchasing the vehicle, Plaintiff relied on FCA's warranty that the vehicle would be free of defects in materials and workmanship, including in the vehicle's electric battery and EHPSP, at the time of purchase.

1358. Prior to Plaintiff's purchase, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff of the Battery Defect or EHPSP Defect in the Vehicle. Plaintiff reasonably expected that the Vehicle, including its electric battery, would function normally in accordance with FCA's specifications and representations. Plaintiff reasonably expected that the Vehicle would be capable of being charged without compromising its safety or exposing the Vehicle to a risk of fire.

1359. The Vehicle was covered by the express warranty when the vehicle was purchased by Plaintiff and the battery and EHPSP were defective at that time. Moreover, the Vehicle was covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1360. As a result of the defects, Plaintiff's Vehicle was subject to FCA Recalls B9A, 95B, 68C and 21D. The battery defect, FCA's recalls and FCA's accompanying instructions deprived Plaintiff of the use and benefit of the Vehicle's electric battery. As a result, the range of Plaintiff's Vehicle was diminished, Plaintiff was deprived of the environmental benefits that were promised, the performance of the Vehicle suffered, the vehicle's range was diminished, and the effective MPG of the Vehicle was greatly reduced. In short, Plaintiff was deprived of the benefits of a PHEV for which Plaintiff paid a substantial premium. To make matters worse, the instructions accompanying FCA's recalls forced Plaintiff to park the Vehicle outside and away from other vehicles, causing great burden and inconvenience and exposing the vehicle to the elements.

1361. As a result of the defects, Plaintiff suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the defects Battery and did not receive the benefit of the bargain after purchasing the Vehicle. Had Plaintiff known that the Vehicle presented a risk of a catastrophic fire, that the use of the Vehicle's electric battery would be prohibited or that he would be forced to park the vehicle outdoors and away from other vehicles, greatly inconveniencing Plaintiff and exposing the vehicle to the heat and the elements, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. As a result of the defects, Plaintiff suffered mental anguish damages due to the reasonable fear that the Vehicle could catch fire.

1362. At the time of the purchase, Plaintiff was unaware of the defects. Had Plaintiff known the true facts about the Vehicle, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it. Because Plaintiff was unaware of the defects, Plaintiff suffered

overpayment damages at the time of the acquisition and suffered incidental, consequential and actual damages after the Vehicle's acquisition.

1363. Plaintiff provided FCA with pre-suit notice and an opportunity to cure by certified mail.

**Defendant**

1364. Defendant FCA US, LLC (hereinafter referred to as "FCA" or "Defendant"), formerly known as Chrysler Group, is a Delaware limited liability company with its principal place of business at 1000 Chrysler Dr., in Auburn Hills, Michigan. FCA US LLC's sole member is FCA North America Holdings LLC, a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan. FCA North America Holdings LLC's sole member is Stellantis N.V., a public company organized under the laws of the Netherlands, with its principal place of business in Amsterdam, the Netherlands.

1365. FCA, through its various entities, designs, manufactures, markets, distributes, and sells automobiles throughout the United States and worldwide. FCA and/or its agents designed and manufactured Plaintiff's Vehicle. FCA also developed and disseminated the owner's manuals and warranty booklets, advertisements, brochures, and other promotional materials relating to Plaintiffs' Vehicles, with the intent that such documents be reviewed and relied on by purchasers such as Plaintiff. FCA is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

1366. The true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, are presently unknown to Plaintiffs who will seek leave of this Court to amend this Complaint to include these DOE Defendants when they are identified.

1367. At all times mentioned in the Complaint, each of the Defendants were agents of each and every other Defendant. In doing the things alleged in the Complaint, each Defendant

was acting within the course and scope of their agency and was acting with the consent, permission and authorization of each of the other Defendants.

## VENUE AND JURISDICTION

1368. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a), which grants federal district courts original jurisdiction of all civil actions where (1) the action is between citizens of different states, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. As set forth below, this action satisfies both requirements. The Court has diversity jurisdiction because Plaintiffs and FCA are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

1369. There is complete diversity of citizenship. Section 1332(a) requires complete diversity of citizenship, which is established when "each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v Kroger,* 437 U.S. 365, 373 (1978).

1370. FCA is a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan. FCA's sole member is FCA North America Holdings LLC, a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan. FCA North America Holdings LLC's sole member is FCA Holdco B.V. (historically, Fiat Chrysler Automobiles N.V.), which is wholly owned by Stellantis N.V., a public company organized under the laws of the Netherlands, with its principal place of business in Amsterdam, the Netherlands. Therefore, for purposes of diversity jurisdiction, FCA is a citizen of the Netherlands.

1371. Plaintiffs are citizens and residents of the states of Alabama, Arizona, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New York, North

Carolina, North Dakota, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, Washington, Wisconsin, and Wyoming. Plaintiffs and FCA are thus citizens of different states.

1372. The Amount In Controversy Exceeds $75,000. Section 1332(a) also requires that the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." Based on each Plaintiff's claim for civil penalties, restitution, rescission and attorneys' fees, the amount in controversy exceeds the jurisdictional minimum of $75,000, exclusive of interest and costs, thereby vesting this Court with jurisdiction under 28 U.S.C. § 1332(a). In addition, each Plaintiff asserts a claim for punitive damages, which is included in determining the amount in controversy for subject matter jurisdiction, *Bell v. Preferred Life Assur. Society*, 320 U.S. 238, 240 (1943). Furthermore, for purposes of determining the amount in controversy the court should consider not just attorneys' fees incurred to date, but the possible attorneys' fees that will be incurred during the court of the litigation. *Fritsch v. Swift Transp. Co. of Ariz, LLC*, 889 F.3d 785, 794 (9th Cir. 2018).

1373. This Court also has original jurisdiction to hear this case by virtue of 15 U.S.C. § 2310(d)(1)(A), the Magnuson-Moss Warranty Act, conferred under 28 U.S.C. § 1131. The amount in controversy exceeds $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

1374. This Court has personal jurisdiction over FCA because FCA is headquartered in this District, and because a substantial part of the events, omissions, or misrepresentations giving rise to these claims occurred in and emanated from this District.

1375. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events, transactions, and conduct giving rise to the claims occurred in and emanated from this District. Further, FCA is headquartered and transacts business in this District.

## FACTUAL ALLEGATIONS

### Development and Marketing of the Defective Vehicles

1376. The Jeep Wrangler and Jeep Grand Cherokee are popular sport utility vehicles that FCA designs, manufactures, and sells under the Jeep brand. The Jeep brand traces its lineage to the original U.S. military Jeeps that were produced during World War II.

1377. The original Jeep Cherokee was introduced in 1975 as a "a sporty, two-door version of the Wagoneer and featured bucket seats, a sports steering wheel, and racy detailing designed to appeal to younger, more adventurous drivers." In 1984, the "all-new" Jeep Cherokee was re-introduced as "the first compact four-door SUV, first uniframe construction, and first full-time 4x4 system with shift-on-the-fly capability."

1378. In the 1990s, the Jeep brand continued to introduce vehicles that met consumer desires for "sporty" and "capable" sport utility vehicles (SUVs), including several iterations of the Jeep Wrangler and Grand Cherokee models. In 1993, Jeep introduced the Jeep Grand Cherokee as a mid-sized luxury SUV.

1379. A few years later in 1999, the Jeep Brand also released the "the new Grand Cherokee (WJ)," which it "marketed as the most capable SUV ever." In 1997, the Jeep brand added the "super-capable Wrangler (TJ) with its new coil suspension" to its lineup.

1380. In the past two decades, sensitivity to higher fuel prices and increased concern about the negative environmental effects of gas-powered vehicle emissions have resulted in a trend away from the gas-guzzling, SUV-heavy vehicle lineups that dominated the end of the 20th

century. In response, manufacturers shifted towards electrification and production of hybrid-electric vehicles, which offer greater gas mileage and less emissions.

1381. In 2020, FCA announced the Jeep plug-in hybrid Wrangler 4xe in response to these trends and in an effort to mitigate the poor gas mileage caused in part by its past designs. In 2022, FCA added the Jeep Grand Cherokee 4xe to its lineup, using the same 4xe moniker it used with the Wrangler 4xe. The 4xe (or "four-by-e") name is a play on the Jeep brand's reputation for 4x4 vehicles that highlights the Defective Vehicles' rugged four-wheel drive and modern electric capabilities.

1382. FCA pervasively advertised the Jeep Wrangler 4xe and Jeep Grand Cherokee 4xe as offering similar performance and capability as the gas-powered equivalents, but with all the environmental and mileage benefits of a plug-in hybrid electric battery.

1383. FCA also pervasively represented that plug-in hybrid-electric vehicles like the Defective Vehicles have significant environmental advantages over conventional vehicles with internal combustion engines. While operating in electric mode, the Defective Vehicles do not produce any of the noxious tailpipe emissions (such as nitrogen oxides and other smog-forming pollutants that are harmful to human health, and greenhouse gases, such as carbon dioxide and methane) that vehicles with internal combustion engines produce.

1384. FCA knew that one of its largest customer bases are outdoor enthusiasts, who are often invested in issues such as climate change and environmental protection. It explicitly sought to exploit these consumer desires for a greener vehicle in their marketing. As explained by an FCA marketing executive: "With Jeep, you have the DNA of adventure and freedom, meaning that our customer already is in a relationship with the planet. . . . But some are maybe 'cheating' in the sense that they don't want to think about the fact that internal-combustion vehicles pollute. Some

are in an open relationship with the planet but like combustion cars. And some are in true love with the planet and nature, and these are the consumers we want to start with" in promoting the Wrangler 4xe.

1385. FCA also announced the Wrangler 4xe with a broadly disseminated advertisement narrated by Carl Sagan, a noted science educator and climate change activist. It concluded by showing the 4xe climbing a mountain and describing it as "the first-ever electric Wrangler."

1386. In addition to embracing the environmental benefits of reduced gas consumption, Jeep also pervasively advertised the plug-in hybrid-electric design as a performance enhancer. When working together, the hybrid and electric power sources are supposed to provide more power and torque than Jeeps with traditional internal combustion engines, giving the Defective Vehicles faster acceleration and better performance.

1387. For example, FCA advertised that the 2021 Jeep Wrangler output was capable of 470 pound-feet (lb.-ft.) of torque at 3,000 revolutions per minute (rpm) and 375 horsepower (hp) at 5,250 revolutions per minute, all while achieving 49 MPGe. By comparison, the lower-cost, gas-powered 2021 Jeep Wrangler with a 2.0 liter turbocharged four-cylinder gas engine could only put out a relatively meager 295 lb.-ft. of torque and 270 hp, with a combined city and highway gas mileage of 21 mpg.

1388. FCA similarly touted the Jeep Grand Cherokee 4xe's performance and range numbers. At release, FCA represented that: "Overall, the 4xe system delivers 375 horsepower (280 kW) and 470 lb.-ft. (637 Nm) of torque. The Grand Cherokee 4xe, targeting an estimated 25 miles (40 km) of all-electric range, returns an estimated 57 MPGe and has an estimated total range of more than 440 miles (708 km)." FCA reassured consumers, "Don't let the near-silence of all-

electric operation fool you—the legendary capabilities of Grand Cherokee still roar beneath this hood."

1389. FCA also represented that the Grand Cherokee 4xe was all of what its gas-powered predecessor was and more because it was "designed and engineered to deliver even more of what has made the Grand Cherokee a true global icon in the premium SUV segment, including legendary Jeep 4x4 capability, class-leading space and versatility and advanced safety features."

1390. In introducing the Defective Vehicles, Christian Meunier, the then-Global President of the Jeep Brand, stated: "Our Jeep 4xe vehicles will be the most efficient, responsible and capable that the brand has ever created." FCA's pervasive marketing messaging for the Defective Vehicles effectively conveyed to consumers that they could have the best of all worlds—an adventurous 4x4 vehicle that was also emissions friendly and technology driven. Or, as FCA puts it: "Yes, you can have both."

1391. The notion that the Defective Vehicles represented the best of all worlds was repeated in literature directed at potential buyers. For example, the vehicle brochure for the 2021 Jeep Wrangler 4xe states that the vehicle includes a "17-kwh Battery" and "is a shining example of hybrid innovation, handing you tomorrow's progressive technology, today," while also providing "the rugged, open-air freedom and legendary capability that Jeep Wrangler is revered for, the world over."

1392. In addition to highlighting the off-road capabilities of the Jeep Wrangler 4xe, FCA also pervasively marketed the vehicle as fit for city driving, especially in all-electric mode. For example, the vehicle brochure for the 2021 Jeep Wrangler 4xe highlighted how the driver could choose between different modes of the hybrid drivetrain under the banner of "POWER x2," including an electric-only mode and an "E-SAVE" mode for "low-emission zones in cities."

1393. FCA published similar messaging and advertising about the Grand Cherokee 4xe, which likewise features a 17-kwh HV Battery and dual electric motor setup like the Wrangler 4xe. FCA again advanced the notion that the Jeep Grand Cherokee 4xe, like the Wrangler 4xe before it, was the best of all worlds.

1394. FCA has continually marketed the Defective Vehicles to gas-conscious consumers by making representations about the efficiency of both vehicles compared with their gas-powered equivalents. This includes, among other things, claiming that the Jeep Grand Cherokee 4xe "has the lowest estimated annual fuel cost of any Grand Cherokee ever," and that by buying the vehicle, they could bid "goodbye to the gas light."

1395. FCA also repeatedly emphasized in its marketing and other pervasive statements the performance capabilities of the Jeep Wrangler 4xe in all-electric mode. In 2021, FCA announced plans to install Jeep-branded EV charging stations at popular off-road trailheads, including in Moab, Utah; Big Bear, California; and the Rubicon Trail in Pollock Pines—the namesake of one of the 4xe trim levels. Alongside this announcement, FCA touted that, "[w]ith 49 MPGe and 21 miles of all-electric range, the Jeep Wrangler 4xe can conquer even the toughest trails with zero emissions."

1396. Notably, the advertised 49 eMPG is only achievable in all-electric mode. Without the ability to charge the vehicle, the 2023 Jeep Wrangler 4xe can achieve only 20 MPG in hybrid mode and the Grand Cherokee only 23 MPG in hybrid mode. Thus, the all-electric mode and convenience of charging at home are central to the value proposition of the Defective Vehicles. To that end, FCA highlighted the convenience of charging inside or near the home. FCA included a 25-foot 110v charger in the purchase of every 4xe vehicle. The relatively limited range of the cord implied that the vehicle was safe to charge within or near the owner's home. FCA also

impliedly represented to each consumer that frequent charging was safe to do over and over, by stating in the manual that "[l]ithium-ion batteries can be recharged and discharged thousands of times."

1397. The purported benefits of the plug-in hybrid-electric design came at a hefty premium to consumers: the Jeep Wrangler and Grand Cherokee 4xe models cost thousands of dollars more than similarly equipped Jeep Wranglers and Grand Cherokees with conventional, non-hybrid internal combustion engines. And while FCA highlighted the electric battery features to justify this premium cost, FCA's marketing never disclosed to consumers that the Defective Vehicles were equipped with dangerous batteries susceptible to fire, even when the vehicle is turned off and not charging.

1398. Nor did FCA's marketing disclose to consumers that they would not be able to park or charge their vehicles indoors due to battery fire risk. Instead, FCA advertised the high-tech and convenient at-home charging features of the Defective Vehicles, and even described the vehicle interiors as "a place to recharge."

1399. Further, by depriving Plaintiffs of their ability to charge their vehicles frequently and conveniently, FCA deprived them of a major value-proposition for the Defective Vehicles: less fuel consumption.

1400. Without the ability to charge the Defective Vehicles, consumers cannot make use of the much-advertised "all-electric" and "e-save" modes. The only practically available mode without plug-in charging capability is "hybrid," which is actually less fuel efficient than the gas-powered 4xe.

1401. As noted in Car and Driver, "[t]o get the full fuel-economy benefit [of the 2021 Wrangler 4xe], you'll have to stay close to home and plug in often. Once the battery has been

depleted, the 4xe actually gets worse fuel economy than a Wrangler powered by the turbo four with none of the plug-in-hybrid hardware (20 versus 22 mpg combined). Blame the extra 800 pounds that the 4xe carries wherever it goes."

1402. After extensively advertising the Defective Vehicles as a fuel-efficient, environmentally-friendly alternative since launch, the Wrangler 4xe -- weighed down by its underutilized electric motors and battery -- is actually slightly less fuel efficient than its lighter, gas-powered cousin. The Grand Cherokee 4xe with an unutilized HV Battery suffers from the same issues. The promise of FCA's various advertisements was thereby left unrealized. Certainly, FCA never disclosed in these numerous commercials or on its website that the Defective Vehicles would consume more fuel (or about the same amount of fuel) than its significantly less expensive gas-powered equivalent if the Defective Vehicles' hybrid and electric features could not be used as intended.

1403. FCA also touted the array of safety features in the Defective Vehicles but never disclosed that the HV Battery presented a fire risk. For example, the vehicle brochure for the 2022 Jeep Wrangler 4xe highlighted its "advanced safety & security systems" and states, "when it comes to your well-being on the road Jeep Wrangler is ready and willing to stand as a constant guardian."

1404. Throughout its marketing materials for the Defective Vehicles, FCA emphasized the vehicles' safety, durability, and reliability, evidencing the materiality of these features to buyers. The brochures for the Defective Vehicles prominently advertised their advanced safety features: They also boasted of the vehicles' superior quality and workmanship. However, FCA never disclosed the existence of the EHPSP Defect.

**The Defective Vehicles are unreasonably dangerous**

## I. The Defective Vehicles are unreasonably dangerous due to their defective high-voltage, lithium-ion batteries.

1405. Lithium ion batteries, such as the Defective Batteries used in the Defective Vehicles, are used in most electric vehicles because of their "high power-to-weight ratio, high energy efficiency, good high-temperature performance, and low self-discharge." However, these batteries also have a well-documented history of fire issues. Safety concerns related to unexpected fires have been well documented, including a battery fire that happened weeks after the crash test of a Chevy Volt in 2011 and several Tesla Model S vehicles that suddenly caught fire while parked, and are known to FCA. Unfortunately, FCA ignored safety concerns in order to market the Vehicle's range, despite warnings published in October 2017 by the National Highway Traffic Safety Administration ("NHTSA") that overcharging lithium-ion batteries can result in one of several exothermic reactions that have the potential to initiate thermal runaway resulting in a spontaneous ignition.

1406. Like other batteries, lithium-ion batteries are made up, in pertinent part, of multiple power-generating compartments called "cells." Each cell contains the basic functional components of a battery: a positive electrode, a negative electrode, and an electrolyte.

1407. The lithium-ion batteries in the Defective Vehicles were produced by Samsung SDI. Samsung SDI also manufactured the cells contained in batteries that allegedly caused fires in certain BMW and Ford models that have been recalled and subject to litigation. Those Ford and BMW recalls occurred in 2020, and upon information and belief, were caused by similar defective attributes as present here. According to BMW, the fires that led to recall of their PHEVs were caused by "thermal events" in the Samsung batteries

1408. Like other batteries, lithium-ion batteries are made up, in pertinent part, of multiple power-generating compartments called "cells." Each cell contains the basic functional components of a battery: a positive electrode, a negative electrode, and an electrolyte. In order to develop a

battery that would deliver the advertised range, FCA developed a battery with "new cell design and chemistry." The battery contains "nickel-rich lithium-ion chemistry" that purportedly provides "improved thermal performance over other chemistries" and requires a "smaller active cooling system for more efficient packaging."

1409. According to NHTSA, proper management of the electrical loads among cells in a pack helps maintain overall charge and discharge performance within an acceptable range. Because temperature is a key indicator of cell electrical performance (e.g., hotter cells may discharge or charge more quickly than colder cells), thermal management strategies must be integrated into the battery system design to monitor charging and discharging events and mitigate potentially problematic conditions that can create a risk of fires like those at issue here.

1410. Most electric and hybrid-electric vehicles, like the Defective Vehicles, use lithium-ion batteries because of their "high power-to-weight ratios, high energy efficiency, good high-temperature performance, and low self-discharge. However, lithium-ion batteries carry well-documented risks of combustion if they are improperly used by an auto manufacturer or placed in vehicles that are defectively designed or manufactured or placed in vehicles that are defectively designed or manufactured. Safety concerns related to unexpected fires connected with lithium-ion batteries are well-documented and were known to FCA at the time it designed, manufactured, and sold the Defective Vehicles. Even before NHTSA released its comprehensive report on lithium-ion battery safety issues in 2017, many scientific and engineering articles discussed the thermal-runaway-related safety concerns of lithium-ion cells and battery packs and proposed solutions

1411. The HV Battery Systems placed in the Defective Vehicles by FCA are nickel-manganese-cobalt compositions. Importantly, "Ni[ckel]-rich NMC cathode materials are known to be susceptible to certain safety issues, such as thermal runaway and the risk of triggering battery

fires." Thus, especially for NMC battery systems, it is imperative to set appropriate controls regarding maximum and minimum state of charge, maximum and minimum cell and/or overall voltage, appropriate current limitations, as well as robust cell temperature monitoring features.

1412. In particular, NMC batteries are particularly susceptible to "lithium plating," a dangerous phenomenon that increases the thermal runaway risks posed by lithium-ion batteries. Lithium plating occurs when metallic lithium deposits on the anode surface form tree-like structures called "dendrites." Those tree-like structures can then penetrate and damage the separator into the cathode and cause short circuiting, which in turn sparks a battery fire.

1413. Dendrite formation— a form of internal physical damage to the battery—can occur as a result of repeated use and/or charging of the battery or its cells outside of manufacturer specifications. The effect of dendrite formation that leads to increased risk of short-circuit and thermal runaway is therefore cumulative; it increases as the battery or its cells are repeatedly subjected to improper use and/or charging conditions.

1414. Significantly, the documented fires in the Defective Vehicles do not appear to be the result of external damage or misuse by the consumer. Upon information and belief, all reported fires to date have resulted from internal battery failure while the cars are parked and turned off, which points to either improper programming or internal issues within the battery.

1415. Despite the known fire risk of the particular composition of these HV Batteries, FCA's design of the Jeep Wrangler 4xe and the Jeep Grand Cherokee 4xe placed the HV Battery directly inside the passenger compartment of the vehicle underneath the rear seat bench. The location of the battery within the cabin means that the combustion of the battery and outgassing of toxic chemicals occurs in the cabin of the Defective Vehicles, which at least one firefighting expert has described as a "terrible idea in my mind."

1416. Just as important as the design and safety features used in a lithium- ion battery pack is rigorous pre-launch testing. The use of better safety systems and more rigorous testing would have prevented the reported battery fire incidents in the Defective Vehicles.

1417. The dilemma facing electric and plug-in hybrid electric vehicles is that incorporating adequate safety measures is not only expensive, but also "is likely to reduce the vehicle's range because any protective materials means less space for the electricity-storing cells." On information and belief, FCA skimped on available protection measures in order to promote the high electric mode range and overall range, speed of charging, and other desirable features of the Defective Vehicles—all to the benefit of FCA's bottom line and to the detriment of owners and lessees of the Defective Vehicles.

**II. The defective vehicles are unreasonably dangerous due to the EHPSP Defect.**

1418. The Defective Vehicles are also unreasonably dangerous due to the EHPSP Defect. According to FCA's recall notice, 2021-2025 model year Jeep Wrangler vehicles may have an electrical hydraulic power steering pump electrical connection susceptible to high resistance. According to FCA, this defect could cause overheating of combustible materials and potentially lead to a fire that could cause injury to persons in or around the vehicle. As a result of the EHPSP Defect, FCA issued Recall 21D in June 2026. The 21D recall instructs owners of the Defective Vehicles to park their vehicles outside and away from structures or other vehicles.

**<u>FCA had advanced notice of the defects in the Defective Vehicles</u>**

**I. FCA had advanced notice of the Battery Defect.**

1419. FCA accumulated knowledge of the automotive industry's issues with the HV Battery packs it placed in the Defective Vehicles. Both the Wrangler 4xe and the Grand Cherokee

4xe utilize 17 kwh high-voltage lithium-ion battery packs, which were manufactured by Samsung SDI America Inc. (“Samsung”).

1420. Samsung has a history of issues with its high-voltage EV batteries, of which FCA has had notice of since at least 2020. In August 2020, for instance, Ford recalled its Kuga PHEV due to a battery defect and owners were told not to charge the battery. The battery manufacturer was Samsung. Similarly, BMW recalled over 26,000 of its vehicles due to defective batteries whereby “the battery production process allowed impurities to enter the cells.” And around 2022, Samsung recalled more than 1,000 of its EV batteries (including in FCA vehicles) because of poor manufacturing quality.

1421. FCA was also on notice of the Battery Defect because it accumulated knowledge of a similar defect in another FCA plug-in hybrid vehicle: the 2017-2018 Chrysler Pacifica plug-in hybrid minivan. Even before the first Jeep PHEV rolled off the lot, FCA began receiving reports of fires related to the HV battery system in Chrysler Pacifica Plug-in Hybrid, including a vehicle fire on April 23, 2019. Another occurred on June 15, 2019, where a Chrysler Pacifica exploded in front of a house while plugged in. The design of the particular parts of the Chrysler Pacifica plug-in that are related to the HV battery are similar to the analogous components in the Defective Vehicles. On February 11, 2022, FCA issued a recall for more than 16,700 of its 2017-2018 Chrysler Pacifica plug-in hybrids due to rising reports of fires in those vehicles. It stated that, “[a] vehicle may experience a fire, even with the ignition in the ‘OFF’ mode,” much like the Defective Vehicles.

1422. FCA’s knowledge of the Chrysler Pacifica fires dates as far back as 2019, so the associated battery issues in those vehicles predated its release of the Defective Vehicles in 2020 and any sale of the Defective Vehicles. FCA manufactured both of these plug-in hybrid systems

and was therefore on notice that similar HV Battery parts were likely to cause fires, especially if they were programmed to be used inconsistently with industry standard safety guidelines.

1423. FCA had exclusive and superior knowledge of the battery defects and Plaintiffs could not reasonably discover the defects through reasonable diligence. Among other sources, FCA knew or should have known of the widespread battery defect through widespread industry knowledge of the dangers inherent in lithium-ion electric car batteries, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early reports of loss of propulsion in Jeep vehicles caused by low battery voltage, reports of fires caused by defective Jeep batteries, consumer complaints made to FCA's network of dealers and directly to FCA, aggregate warranty data compiled from FCA's network of dealers, testing conducted by FCA in response to consumer complaints, repair order and parts data received by FCA from FCA's network of dealers, recall notices, customer satisfaction notices ("CSNs"), technical service bulletins ("TSBs"), internal investigations and failure analyses, software updates, diagnostic software update vehicle data and NHTSA reports. Despite such knowledge, FCA suppressed the true facts in order to sell additional vehicles, avoid the cost of repairs, replacements or recalls, limit warranty claims and avoid bad press.

1424. FCA knew of the risk from the Defective Batteries from various sources, including: the well-documented risks of runaway propagation in lithium-ion batteries; NHTSA warnings of safety risks for lithium-ion batteries; the well-known risks of violent combustion from the NMC batteries used in the Defective Vehicles; the rigorous pre-launch testing FCA must have done on the Defective Vehicles' HV Battery and hybrid propulsion system; consumer complaints lodged with NHTSA, FCA, and publicized online; and similar battery fire issues in other hybrid electric

vehicles, including FCA's Chrysler Pacifica PHEVs, and BMW and Ford-manufactured vehicles that use Samsung batteries for electric propulsion.

1425. The dangers inherent in lithium-ion electric car batteries were well-known to FCA before FCA sold the first Jeep PHEV. An October 2017 NHTSA Paper titled Lithium-ion Battery Safety Issues for Electric and Plug-in Hybrid Vehicles explained:

- Li-ion battery technology is in the development stage and is not yet settled.
- As battery technology matures, the safety risks may increase as manufacturers attempt to obtain greater performance from existing chemistries and adopt new chemistries with less field experience. Increasing the bounds of performance implies operating the battery cells closer to limits where damage initiation and growth, leading to failure, can occur.
- The investigation conducted here demonstrates that there are numerous external events or processes in the life of a vehicle that could contribute to damage and failure of a Li-ion battery.
- Exothermic reactions and/or internal electrical shorts may be triggered by manufacturing defects . . . . If allowed to continue, these reactions or shorts can create conditions for self-heating within the cell; which grow to become uncontrolled increases in temperature and pressure (thermal runaway); and potentially end in venting or catastrophic failure of the cell.
- The assessment conducted here suggests that codes and standards for Li-ion battery vehicle systems are in their early development stages and immature at this time. The assessment suggests there are gaps and risks inherent in new and rapidly evolving technology including:
- Immature design and manufacturing standards;
- Immature safety systems integration requirements;
- Immature quality control requirements;
- Immature battery life cycle durability requirements.
- The results of this investigation show that Li-ion battery technology is a rapidly evolving technology field that is far from settled.

- The risks associated with Li-ion battery systems derive fundamentally from the novelty of the technology and limited long-term experience base with its safety performance.

- The ability to store and deliver substantial energy onboard a vehicle also implies that substantial energy can be released, with corresponding hazards, in the case of failure. In this case, the energy is stored electrochemically in batteries, rather than chemically as a fuel. While systems safety engineering can achieve levels of safety with Li-ion technology comparable to that of conventional fuels, the automotive industry does not have decades of experience with it and the same understanding that it has concerning conventional and alternative fuels. Nor is there a directly comparable technology that can provide a strong experience base for development of safety requirements.

https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/12848-lithiumionsafetyhybrids_101217-v3-tag.pdf

1426. A meta-review of lithium-ion battery ("LIB") fire safety, in an article published in the Journal of the Electrochemical Society, similarly stated:

- Although great success has been made on LIB commercialization, safety concerns have emerged because of unexpected fires. Some LIBs can display a tendency to ignite under abuse conditions and initiate fires or release toxic gases, thus creating a hazard. Moreover, as LIB technology moves to larger scales, from single cells to modules and packs, assuring their safety is an issue of growing severity and stakes. Exceeding the window of conditions in which LIBs operate safely can trigger thermal runaway (TR) and lead to fires.

- The temperature of the LIB reaches a critical value such that the reaction rate of an exothermic reaction increases the temperature, which in turn leads to further acceleration of the reaction rate. This positive feedback of temperature increase is a sign of ignition and creates the fire hazards. Once a cell fails, the large amount of heat generated could trigger the thermal runaway of adjacent cells, contributing to fire propagation. Fires on the module and pack scales can release large amounts of heat and toxic gases and are difficult to suppress.

- Internal cell defects and internal faults that develop inside individual cells over time, causing the initiation of thermal runaway, are a major concern for all industries which demand methods and tools to reliably identify them.

- Another important concern that most industries agree on is the importance of the scale at which the safety testing takes place. The tests performed at component level might not be comparable to the tests performed at system level. Most of the research on safety is performed on cell or small modules, and similar data at pack and system is scarce.

- LIB failure can occur very rapidly after a cell is damaged, or slowly over a long period of time, causing delayed failure long after the damage is initiated. The time in between is usually referred to as the incubation period which can last from several hours to years, depending on the cause and failure mechanism. However, when a critical point is reached, usually governed by the balance between heat generation and heat dissipation from the cell and battery pack to the environment, the failure happens very fast.

https://iopscience.iop.org/article/10.1149/1945-7111/aba8b9

1427. Through its accumulated knowledge, FCA was aware of the serious danger of the Defective Batteries by the time it released the Defective Vehicles into the market, and certainly well before it issued its November 2023 recall.

## II. FCA had advanced notice of the EHPSP Defect.

1428. FCA had advanced notice of the EHPSP Defect. Between May 2023 and April 2024, the FCA Technical Safety and Regulatory Compliance group investigated fires in certain Jeep Wrangler and Jeep Gladiator vehicles that originated at the EHPSP electrical connection. The investigation was prematurely closed.

1429. In August 2024, FCA re-opened its investigation following additional reports of fires originating at the EHPSP electrical connection. In September 2024, NHTSA's Office of Defect Investigations opened an investigation into engine compartment fires in 2021-2023 Jeep Wrangler and Jeep Gladiator vehicles. In March 2025, NHTSA issued an Information Request relating to the EHPSP issue. Between April 2025 and March 2026, FCA alleges that it worked to determine the root cause of the EHPSP defect. In May 2026, FCA admitted that a safety defect existed due to the EHPSP defect. FCA issued Recall 21D related to the EHPSP Defect in June 2026.

1430. FCA had exclusive and superior knowledge of the EHPSP Defect and Plaintiffs could not reasonably discover the defect through reasonable diligence. Among other sources, FCA

knew or should have known of the EHPSP Defect through pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early reports of fires originating in the area of the EHPSP electrical connection, consumer complaints made to FCA's network of dealers and directly to FCA, aggregate warranty data compiled from FCA's network of dealers, testing conducted by FCA in response to consumer complaints, repair order and parts data received by FCA from FCA's network of dealers, recall notices, customer satisfaction notices ("CSNs"), technical service bulletins ("TSBs"), internal investigations and failure analyses, software updates, diagnostic software update vehicle data and NHTSA reports. Despite such knowledge, FCA suppressed the true facts in order to sell additional vehicles, avoid the cost of repairs, replacements or recalls, limit warranty claims and avoid bad press.

1431. Through its accumulated knowledge, FCA was aware of the serious danger of the EHPSP Defect by the time it released the Defective Vehicles into the market, and certainly well before it issued its June 2026 recall.

**FCA had a duty to disclose the defects**

1432. FCA had a duty to disclose the Battery Defect and the EHPSP Defect as well as the safety risk caused by such defects because:

a. FCA was in a superior position to know the true state of facts about the Defective Vehicles, the Battery Defect and the EHPSP Defect and had exclusive knowledge of the defects based on sources not available to consumers;

b. Plaintiffs could not reasonably have been expected to learn or discover that their Vehicles were defective or had the Battery Defect or the EHPSP Defect;

c. FCA actively concealed the defects at issue, which were material facts of which it had exclusive knowledge;

d. FCA knew that Plaintiffs were not aware of the defects, that they could not reasonably have been expected to learn about or discover that their Vehicles were defective or had the Battery Defect or the EHPSP Defect, and that they would not have purchased the Vehicles, or would have paid substantially less for the Vehicles, had they been aware of the defects;

e. The existence of the defects was a material fact, pertaining to vehicle safety, that a reasonable consumer would consider highly material in determining whether to purchase or lease the subject vehicles and at what price; and

f. FCA made partial disclosures about the vehicles' range, the batteries' capabilities, the vehicles' safety and the vehicles' quality that were misleading without full disclosure of the defects.

**Fires began to occur after the Defective Vehicles were launched**

1433. After FCA released the Defective Vehicles into the market, owners and lessees began complaining that their Defective Vehicles suddenly caught fire. According to FCA, between April and November 2023, at least eight Jeep Wrangler 4xes caught fire all while parked and turned off. According to FCA's recent 2024 Recall, an additional thirteen incidents occurred in Jeep Wrangler and Grand Cherokee 4xe's between April and July 2024. Numerous other fires were recorded in the NHTSA complaint database.

1434. In addition to these incidents, FCA also had notice of the Defective Batteries through its buyback acquisition of Defective Vehicles and subsequent investigation. According to its 2023 Recall Part 573 Safety Recall Report, FCA requested buybacks of seven vehicles and received buybacks of two of those vehicles and disassembled the HV battery packs.

1435. In addition to these earlier inspections, according to its Part 573 Recall Report for the more recent 2024 Recall, "FCA conducted further analysis of the battery packs from" certain Wrangler 4xe and/or Grand Cherokee 4xe Defective Vehicles that caught fire between April and July 2024.

1436. The Defective Vehicles also suffered electrical fires from the EHPSP Defect after they were sold. NHTSA complaints relating to underhood fires were submitted to NHTSA as early as March 2021. Other similar fires were reported to NHTSA in September 2021, November 2021, May 2023, August 2023, January 2024, February 2024, March 2024 and January 2025.

1437. By April 2023, FCA had begun investigating underhood fires originating in the area of the EHPSP electrical connector. But it was not until June 2026 that FCA first issued a recall relating to the EHPSP Defect. That same month, NHTSA announced that it was aware of 51 fires and one injury likely caused by the EHPSP Defect.

1438. All vehicle manufacturers, including FCA, routinely monitor and analyze NHTSA complaints to determine whether vehicles or components should be recalled due to safety concerns. Thus, on information and belief, FCA has knowledge of all NHTSA complaints filed concerning the vehicles it manufactures, including the Defective Vehicles. See TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

**Plaintiffs unknowingly purchased Defective Vehicles**

1439. Plaintiffs made the decision to purchase their Vehicles after considering FCA's representations about the Vehicle, including the reported range and mileage. Plaintiffs chose their Vehicles based on the Vehicles' represented range, effective gas mileage, hybrid features and safety (including, without limitation, its ability to be free from a risk of battery fire and safely charged to 100%), the vehicle's alleged utility and FCA's reputation for manufacturing quality

vehicles. In purchasing the Vehicle, Plaintiffs relied on FCA's warranty that the Vehicles would be free of defects in materials and workmanship, including in the Vehicle's electric battery and EHPSP, at the time of purchase.

1440. Prior to Plaintiffs' purchase of their vehicles, neither FCA nor any of its agents, dealers, or other representatives informed Plaintiffs of the Battery Defect or EHPSP Defect in the Vehicles. Plaintiffs reasonably expected that their Vehicles, including their electric batteries and EHPSP would function normally in accordance with FCA's specifications and representations. Plaintiffs reasonably expected that their Vehicles would be capable of being charged without compromising their safety or exposing the vehicle to a risk of fire.

1441. The Vehicles had less than 100,000 miles and was still covered by the express warranty when the Vehicles were acquired by Plaintiffs and their batteries and EHPSPs were defective at that time. Moreover, the Vehicles had less than 100,000 miles and were still covered by the express warranty when FCA failed to provide an adequate repair or replacement for the defective battery and defective EHPSP within a reasonable time.

1442. As a result of the Battery Defect and EHPSP Defect, Plaintiffs suffered an ascertainable loss resulting from FCA's concealment, fraud, omissions, and refusal to correct the Defective Battery and EHPSP Defect and did not receive the benefit of the bargain after purchasing the Vehicles. Had Plaintiffs known that the Vehicles presented a risk of a catastrophic fire, they would not have purchased the Vehicles.

1443. At the time of the purchase, Plaintiffs were unaware that their Vehicles and their batteries and EHPSPs were defective. Had Plaintiffs known the true facts about their Vehicles, Plaintiffs would not have purchased the Vehicles or would have paid substantially less for them. Because Plaintiffs were unaware of the defective nature of the Vehicles and their defective

batteries and EHPSPs, Plaintiffs suffered overpayment damages at the time of the acquisitions and suffered incidental, consequential and actual damages after the Vehicle's acquisitions.

**FCA issued a series of ineffective recalls of the Defective Vehicles**

1444. Despite FCA's actual and/or constructive knowledge of the serious risk of explosion and fire in the Defective Vehicles, it did nothing to remedy the problem or even warn consumers until its November 2023 and June 2026 recalls.

1445. According to the 2023 Recall Part 573 Recall Report that FCA sent to NHTSA on November 22, 2023, FCA's Technical Safety and Regulatory Compliance organization began investigating fire risk from the HV battery pack after receiving numerous reports of fires. By October 2023, FCA had conducted "two vehicle buybacks and . . . disassembled the HV battery packs. The modules and cells are undergoing additional analysis." FCA still has not disclosed the results of any such analysis. Finally, on November 22, 2023, FCA's Vehicle Regulations Committee decided "to conduct a voluntary safety recall" of the Defective Vehicles. The 2023 Recall, however, did not provide any fix for the Battery Defect. Four months later, FCA announced an attempted recall procedure in March 2024. But even after those months of delay, FCA admitted that it still had not identified the root cause of the Battery Defect.

1446. Nevertheless, FCA self-servingly predicted in its communications with dealers that, "Very few vehicles [an estimated one percent] are expected to require HV battery replacement." FCA's rosy prediction for its 2023 Recall was off the mark. Defective Vehicles failed the recall procedure in unexpectedly high numbers. One online poll on a Jeep 4xe forum found that nearly half of respondents needed a replacement HV battery, with all but one still waiting on their battery at the time they responded to the poll.

1447. According to FCA's final Quarterly Report to NHTSA regarding its 2023 Recall, as of July 26, 2024, roughly half of a "recall population of 32,125" vehicles actually received recall service. Unsurprisingly, given the large number of vehicles that ultimately failed recall service, consumers have reported waiting for months on end for their replacement HV Battery on various Jeep forums.

1448. As stated above, FCA Recall B9A was announced in November 2023. It applied to 2021-2023 Jeep Wrangler PHEVs. According to the recall notice, an internally failed HV battery could lead to a vehicle fire. Owners were instructed to refrain from charging their vehicles and to not park their vehicles near buildings, structures or other vehicles. At the time of the recall notice, the approved remedy, a software flash, was not available. The initial recall applied to approximately 32,000 vehicles.

1449. In September 2024, FCA issued Recall 95B. The recall applied to 2020-2024 Jeep Wrangler PHEVs and 2022-2024 Jeep Grand Cherokee PHEVs. The new recall applied to subject vehicles even if they had already received the Recall B9A repair. According to FCA, the most likely root cause of the defective batteries in the Defective Vehicles was separator damage. At the time of the recall notice, the approved remedy, a software flash, was not available. The 2024 recall applied to approximately 154,000 vehicles.

1450. In October 2025, FCA issued Recall 68C. The recall applied to 2020-2025 Jeep Wrangler PHEVs and 2022-2026 Jeep Grand Cherokee PHEVs. The new recall applied to subject vehicles even if they had already received the Recall B9A repair or the Recall 95B repair. At the time of the recall notice, the approved remedy, a software flash, was not available.

1451. According to FCA's 21D recall notice, 2021-2025 model year Jeep Wrangler vehicles may have an electrical hydraulic power steering pump electrical connection susceptible

to high resistance. According to FCA, this defect could cause overheating of combustible materials and potentially lead to a fire that could cause injury to persons in or around the vehicle. As a result of the EHPSP Defect, FCA issued Recall 21D in June 2026. The 21D recall instructs owners of the Defective Vehicles to park their vehicles outside and away from structures or other vehicles.

1452. As FCA floundered in performing the various recalls, it continued to advise the Defective Vehicle owners and lessees "to refrain from recharging these vehicles and not to park them inside of buildings or structures, or near other vehicles until the vehicle has the final repair completed." These instructions left the Defective Vehicle owners with three choices: (i) follow FCA's instructions, if possible, at the great inconvenience of parking far from home and the expense and environmental impact of additional consumption of gasoline (and potentially degrading their HV Batteries further by not charging them as per FCA's use guidelines); (ii) ignore FCA's instructions and risk disaster; or (iii) sell the vehicles at a substantial loss as a result of FCA's conduct.

**FCA's express and implied warranties**

1453. Plaintiffs purchased their Vehicles from FCA's network of authorized dealers who were authorized sellers and distributors of the Defective Vehicles. Those dealers were and are FCA's authorized representatives for service and repair, including warranty repairs, of the subject vehicles. FCA intends for the dealers to sell its vehicles to consumers like Plaintiffs and the contracts between FCA and its authorized dealers, including the warranties, are made for the express benefit of the ultimate purchasers of the subject vehicles and not for the dealers. As a result, consumers, not FCA's dealers, are the intended third-party beneficiaries of all express and

implied warranties between FCA and its dealers relating to the subject vehicles and those warranties are designed solely for the benefit of the ultimate consumers of the subject vehicles.

1454. When Plaintiffs' Vehicles were acquired by Plaintiffs, they were backed by FCA's New Vehicle Limited Warranty, which covered the Vehicles and warranted the Vehicle, including their batteries, to be free of defects in materials and workmanship at the time of purchase or lease. An implied warranty of merchantability also accompanied the sale and lease of the vehicles by operation of law under the UCC and Texas law.

1455. Pursuant to the express and written New Vehicle Limited Warranty, FCA warranted Plaintiffs' Vehicles' to be free of defects in materials and workmanship and that repairs and other adjustments would be made for the benefit of Plaintiffs by authorized FCA dealers, without charge, to correct defects in materials or workmanship.

1456. Pursuant to the implied warranty, FCA warranted the Vehicles were merchantable under both the UCC and the applicable state law governing each Plaintiff's transaction. A merchantable electric vehicle can be safely parked and charged inside a garage without the risk of fire. A merchantable electric vehicle can be safely charged to its full capacity without the risk of fire. A merchantable vehicle can be safely used without a risk of an underhood fire.

1457. FCA does not sell vehicles directly to consumers such as Plaintiffs but rather only through its authorized FCA dealers. Plaintiffs acquired the Vehicles from authorized FCA dealers.

1458. FCA also does not directly provide the repairs or other services called for under the terms of FCA's New Vehicle Limited Warranty. Instead, FCA uses its authorized FCA dealers to both provide the written New Vehicle Limited Warranty to consumers who purchase or lease FCA vehicles and to perform repairs or other services under the terms of FCA's New Vehicle Limited Warranty.

1459. As intended and directed by FCA, FCA's written New Vehicle Limited Warranty was provided to Plaintiffs, the ultimate consumers, at the time they took delivery of the vehicles and as part of the basis of the bargain. FCA's New Vehicle Limited Warranty contains the rights and obligations of both Plaintiffs and FCA and is a binding agreement between them. The sale of the Vehicle by FCA's authorized dealer, coupled with the issuance of FCA's express warranties, created a direct transactional relationship between FCA and Plaintiffs. Since FCA provided an express and written warranty to the ultimate consumer with the purchase or lease of the vehicle no further "privity of contract" is required to enforce the warranties.

1460. When deciding to acquire the Vehicles, Plaintiffs were aware FCA warranted that its vehicles to be free of defects at the time of purchase or lease and during the warranty period. In purchasing the subject Vehicles, Plaintiffs relied on FCA's warranty that the Vehicles, including their electric batteries, would be free of defects at the time of purchase and during the warranty period.

1461. Additionally and alternatively, Plaintiffs may enforce FCA's express New Vehicle Limited Warranty as well as the implied warranty of merchantability as an intended third-party beneficiary. FCA's written New Vehicle Limited Warranty and the implied warranty of merchantability were and are intended solely for the benefit of Plaintiff, the owner of the Vehicle. Plaintiffs were and are the intended third-party beneficiary of those warranties. The dealers from whom they purchased the Vehicles were not intended to be the ultimate consumer of the subject Vehicles and had no rights under the warranty agreements applying to the Vehicles.

1462. The express and implied warranties applicable to the subject Vehicles were intended for the benefit of the ultimate purchasers and owners of the vehicles. The applicable

warranties are applicable to original or subsequent owners and are transferrable from owner to owner.

1463. FCA's New Vehicle Limited Warranty is only intelligible if it is understood as being intended to benefit Plaintiffs, i.e. the persons who purchased the Vehicles and are the owners of the Vehicles. The dealers from whom Plaintiffs purchased the subject Vehicles were not intended to be the ultimate consumer of the subject Vehicles, were not the intended beneficiary of the express and implied warranties applying to the Vehicles and had no rights under the warranty agreements at issue. Rather, the warranty agreement was designed for and intended to benefit the ultimate consumers only.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION -- BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ. (THE "MMWA")

1464. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1465. Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

1466. FCA is a "supplier" and a "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

1467. The Vehicles are a "consumer product" as defined in 15 U.S.C. § 2301(1), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

1468. The Vehicles were covered by a "written warranty" or a "service contract" as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

1469. The Vehicles were covered by express warranties as defined in 15 U.S.C. § 2301(6). Specifically, the Defective Vehicles had an express written warranty that covered the

Vehicles, including but not limited to the batteries and EHPSPs, and FCA warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease. FCA also warranted that the Defective Vehicles' high voltage battery pack and EHPSPs were free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship. These express warranties became part of the basis of the parties' bargain. Accordingly, FCA's warranties are express warranties under Florida law.

1470. The Defective Vehicles are covered by a new vehicle limited warranty, including a Basic Limited Warranty for three years and 36,000 miles and High Voltage Battery Limited Warranty for eight years and 100,000 miles. The Basic Limited Warranty "covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." The Basic Limited Warranty and High Voltage Battery Limited Warranty apply to anyone who is "a purchaser for use of the vehicle."

1471. Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, any warranty limitations are unenforceable because FCA knowingly sold a defective product to Plaintiffs. The time limits contained in the applicable warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored FCA. A gross disparity in bargaining power existed between FCA and the Plaintiffs because FCA knew or should have known that the Defective Vehicles were defective at the time of sale and would fail well before their useful lives.

1472. Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect failed its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because FCA has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1473. FCA breached its warranties by selling and leasing the Subject Vehicles with the defective batteries and EHPSPs, requiring repair or replacement within the applicable warranty periods, and failing to honor the warranties by providing adequate repairs or replacements during the applicable warranty periods. Plaintiffs presented their vehicles to FCA-authorized dealers for repair and notified FCA of its breaches within a reasonable time, and/or were not required to do so because affording FCA a reasonable opportunity to cure its breaches would have been futile.

1474. In any event, FCA knew about the defects but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, FCA was provided notice of these issues within a reasonable amount of time by the numerous complaints filed against them.

1475. As a result of said nonconformities, Plaintiffs cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, reliable, and efficient transportation. Plaintiffs could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiff's acceptance of the subject vehicles.

1476. Plaintiffs would not have purchased their vehicles, or would have paid less for their vehicles, had they known, prior to their respective time of purchase or lease, that their vehicles utilized the defective batteries and EHPSPs. As a direct and proximate result of FCA's willful failure to comply with its obligations under the express warranties, Plaintiffs suffered actual and consequential damages. Such damages include, but are not limited to, a diminution in

the value of the subject vehicles containing the defects identified herein as well as overpayment at the time of sale. As a direct and proximate result of FCA's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial for which they now sue together with an award of costs and attorneys' fees.

**SECOND CAUSE OF ACTION –**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ. (THE "MMWA")**

1477. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

1478. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

1479. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). FCA is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5). Plaintiffs' Vehicles are a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

1480. FCA is and was at all relevant times a "merchant" with respect to motor vehicles under applicable state law(s), and a "seller" of motor vehicles under section 672.103(1)(d).

1481. FCA is a "warrantor" within the meaning of Section 2301(5) of the MMWA.

1482. With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under the applicable state law(s).

1483. The Subject Vehicles are and were at all relevant times "goods" within the meaning of the applicable state law(s).

1484. As set forth herein, Defendant impliedly warranted the Subject Vehicles as being merchantable and fit for a particular purpose, which warranties are implied within the meaning of

Section 2301(7) of the MMWA. Defendant breached the implied warranties in the manner described herein.

1485. Defendant's implied warranties of merchantability and fitness for a particular purpose arose by operation of law in connection with the sale of the Subject Vehicles, and Defendant breached those implied warranties as described herein, resulting in the nonconformities and damages alleged above.

1486. As a direct and proximate cause of Defendant's breach and failure to comply with their obligations under the applicable implied warranties, Plaintiffs suffered actual, special, incidental and consequential damages in an amount according to proof at trial, in addition to Plaintiffs' attorneys' fees and costs.

1487. FCA provided Plaintiffs with an implied warranty that the Defective Vehicles, and any parts thereof, were merchantable and fit for the ordinary purposes for which they were sold. FCA impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Vehicles were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Vehicles would be fit for its intended use while being operated, charged, stored or parked.

1488. The Defective Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Battery Defect and EHPSP Defect can manifest and result in spontaneous ignition and fire and is therefore not safe to operate. In addition, the Defective Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and convenient transportation at the time of sale or thereafter because the restrictions placed on the use and charging of the Defective Vehicles

severely compromised their range, utility, performance and effective gas mileage. The defects were of such a character that when the Defective Vehicles were used for the purpose for which they were intended they were likely to be a source of danger to purchasers and others if not properly designed and fashioned. The Defective Vehicles were therefore a "thing of danger" that made their use a likely source of danger to many people. As purchasers of Defective Vehicles, Plaintiffs are among of the persons for whom use of the Defective Vehicle, the Defective Batterie and the Defective EHPSPs were contemplated by FCA.

1489. Plaintiffs acquired the Vehicles from a network of authorized FCA dealers, were the intended consumers of the Defective Vehicles the dealers had no rights under the warranty agreements. As such, FCA is liable for the breach of the implied warranty of merchantability despite an alleged lack of privity with Plaintiffs.

1490. Plaintiffs provided FCA with notice of its breaches of warranty within a reasonable time after they discovered or should have discovered such breaches. Plaintiffs notified FCA of its breach within a reasonable time, and/or were not required to do so because affording FCA a reasonable opportunity to cure its breaches would have been futile.

1491. In any event, FCA knew about the defects but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations. Moreover, FCA was provided notice of these issues within a reasonable amount of time by the numerous complaints they received from various sources, including through the NHTSA database, other online sources, from the federal class action complaint and directly from consumers, including Plaintiffs.

1492. FCA failed to adequately remedy the defects in the subject Vehicles within a reasonable time.

1493. Plaintiffs are entitled to relief because FCA's breach of the implied warranty of merchantability was a producing cause of economic damages to Plaintiffs in the form of overpayment at the time of purchase, out of pocket costs, increased gasoline costs and various consequential damages including mental anguish damages. Plaintiffs seek an award of such damages along with all reasonable and necessary attorneys' fees and costs of court.

## LIMITATIONS

## PLAINTIFFS' CLAIMS ARE TIMELY UNDER LAW OR EQUITY

### Class Action Tolling

1494. Plaintiffs gave timely notice of his claims against FCA in the present action as a putative class member in the following class actions (the "Class Actions"):

- *Teuber v. FCA US, LLC*, United States District Court, Eastern District of Michigan, Case No. 2:25-cv-10189-JUL, which was filed on April 1, 2025;
- *Frisch v. FCA US, LLC*, United States District Court, Eastern District of Michigan, Case No. 2:24-cv-10546-BRM, which was filed on March 4, 2024; and
- *Aiello v. FCA US, LLC*, United States District Court, Eastern District of Michigan, Case No. 2:26-cv-11365-BRM, which was filed on April 24, 2026.

1495. There is no prejudice to FCA in gathering evidence to defend against Plaintiffs' individual claims because the class definition in the Class Action complaints within which Plaintiffs are putative class members and the allegations in the class action lawsuit put FCA on notice of the facts that give rise to Plaintiffs' individual actions, the witnesses necessary for FCA to defend Plaintiffs' individual actions, and the causes of action against FCA asserted in Plaintiffs' individual action.

1496. The Class Plaintiffs alleged the same material facts on behalf of Plaintiffs as putative class members as are being alleged by Plaintiffs in the present individual action.

1497. The facts alleged in the Class Actions are substantially similar, if not identical to the facts alleged herein.

1498. The allegations in the Class Actions are based on the same subject matter and similar evidence as the instant complaint. Those allegations concern the same evidence, memories, and witnesses as the subject matter in the instant complaint.

1499. The Class Actions protected the efficiency and economy of litigation because that class action is protecting the rights of thousands of consumers nationwide through a single action. Consumer class actions regarding defective vehicles brought against manufacturers are regularly certified, making a class action lawsuit an efficient means of pursuing such claims.

1500. The tolling of Plaintiffs' individual statute of limitations encourages the protection of efficiency and economy in litigation as promoted by the class action device, so that putative class members would not find it necessary to seek to intervene or to join individually because of fear the class might never be certified or putative class members may subsequently seek to request exclusion.

1501. The running of all statute of limitations on Plaintiffs' claims asserted against FCA in the present action were therefore tolled by *American-Pipe* tolling during the entire pendency of the Class Actions.

**The Discovery Rule**

1502. The tolling doctrine was made for cases of concealment like this one. For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

1503. Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiffs could not have discovered that FCA was concealing and misrepresenting the true properties and capabilities of their Vehicles.

1504. Plaintiff could not have reasonably discovered, and did not know of facts that would have caused a reasonable person to suspect that FCA had intentionally failed to disclose the existence and effect of the Defective Batteries and defective EHPSPs.

1505. Likewise, a reasonable and diligent investigation could not have disclosed that FCA had information in its possession about the existence of the Defective Batteries and EHPSP Defect and that they concealed that information.

**Fraudulent Concealment**

1506. Throughout the relevant time period, all applicable statutes of limitation have been tolled by FCA's knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

1507. Well before the date of this Complaint, FCA knew of the existence of the Defective Batteries and EHPSP Defect, but continued to distribute, sell, and/or lease the Defective Vehicles. In doing so, FCA concealed and expressly denied the existence of the Defective Batteries and EHPSP Defect and/or failed to notify Plaintiff and others about the true nature of the Defective Vehicles.

1508. Instead of disclosing its deception and the existence of the Defective Batteries and EHPSP Defect, FCA falsely represented that its vehicles were safe and reliable and fit for their ordinary purpose.

**Estoppel**

1509. FCA had a continuous and on-going duty to tell the truth about the Defective Vehicles and to disclose to consumers including Plaintiff the facts that they knew about the Defective Batteries and EHPSP Defect.

1510. Although FCA had the duty throughout the relevant period to disclose to Plaintiffs the existence of the Defective Batteries, EHPSP Defect and Defective Vehicles, FCA chose to intentionally misrepresent and conceal the existence of these defects and the fact that the Defective Vehicles were unfit for their ordinary purpose.

1511. FCA actively concealed the true character, quality, performance, and nature of the Defective Vehicles, Defective Batteries and EHPSP Defect. Plaintiffs reasonably relied upon FCA's knowing and active concealment of these facts. Thus, FCA is stopped from relying on any statutes of limitations in defense of this action.

## ARBITRATION

1512. In similar litigation, FCA has alleged that claims such as the instant case are subject to arbitration based on arbitration language in a warranty booklet. Plaintiffs assert that they are not bound by this provision because they never agreed to it and because:

- There was no mutual assent to the arbitration provision;
- FCA never adequately conveyed to Plaintiffs an offer to arbitrate;
- Plaintiffs had no notice of the arbitration provision;
- The arbitration provision was neither disclosed nor discussed during the transactions in which Plaintiffs obtained their vehicles;
- Plaintiffs did not receive the warranty booklet containing the arbitration provision during the transactions in which Plaintiffs obtained their vehicles;

- Plaintiffs did not receive the warranty booklet containing the arbitration provision when they took possession of their vehicles;
- Plaintiffs never signed an "Agreement to Arbitrate," which was a condition precedent to the formation of any arbitration agreement;
- Plaintiffs never signed an "Arbitration Acknowledgment Form," which was a condition precedent to the formation of any arbitration agreement;
- Plaintiffs timely and validly opted out of the alleged arbitration provision by letter to FCA dated July 7, 2026.

1513. In similar litigation, FCA has alleged that claims such as the instant case are subject to arbitration based on arbitration language in agreements between consumers and the dealers from whom they leased or purchased their vehicles. Plaintiffs assert that FCA, as a non-party to any such agreement, cannot enforce it against Plaintiffs.

## ATTORNEYS' FEES

1514. Plaintiffs seek all reasonable and necessary attorneys' fees in this case, which include the following:

a. preparation and trial of this lawsuit;

b. post-trial, pre-appeal legal services; and

c. an appeal to the Sixth Circuit Court of Appeals;

## CONDITIONS PRECEDENT

1515. All notices and other conditions precedent to Plaintiffs' rights to recover herein have been performed, have occurred or have been excused.

## JURY DEMAND

1516. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a jury trial of this matter and tenders the proper jury fee with the filing of this Complaint.

## CONCLUSION AND PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully prays that FCA be cited to appear and answer herein, and that upon final trial, they recover their actual damages, consequential damages, additional statutory damages, exemplary damages, attorney's fees, costs of court, pre-judgment and post-judgment interest at the highest legal rates, and such other and further relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

*/s/ Steven L. Marchbanks*

Andrew Babnik, Jr.
**BABNIK LAW PLLC**
2723 S. State Street, Ste. 150
Ann Arbor, MI 48104
andrew@babniklaw.com

Steven L. Marchbanks
**PREMIER LEGAL CENTER, APC**
1055 Torrey Pines Rd. Ste. 205
La Jolla, CA 92037
(619) 235-3200
steve@premierlegalcenter.com

**ATTORNEYS FOR PLAINTIFFS**